336 S.E.2d 741

**STATE of West Virginia**

v.

**Sam Blackburn ACORD.**

**No. 16560.**

Supreme Court of Appeals of West Virginia.

Nov. 7, 1985.

William H. File, III, John L. File, Beckley, for appellant.

State of West Virginia, Attorney General Office, Charleston, for appellee.

BROTHERTON, Justice:

The appellant, Sam Blackburn Acord, was found guilty of first degree sexual assault by a Raleigh County jury on June 13, 1983, and was sentenced to a term of not less than ten nor more than twenty years in the penitentiary. He appeals that conviction, alleging several errors in the proceedings. We find no error warranting reversal, and, therefore, affirm the trial court's judgment.

The victim in this case was a twenty-seven-year-old woman who lived with her husband and two children in Raleigh County. On June 8, 1980, the victim's husband, who worked a late shift as a foreman at Buffalo Mining, left the house at 10:00 p.m. Shortly thereafter the victim went to bed and fell asleep. She was awakened by three men wearing masks and gloves. One

man put a gun to her head and told her that they would not hurt her children if she cooperated. Each of the three men had sexual intercourse with the victim. Afterwards, the men ransacked parts of the house and stole money, three guns, and a class ring. Because her attackers never removed their masks or gloves and never turned on a light, the victim could not identify them.

For two years the case lay dormant. Then, in February, 1982, the West Virginia State Police received information from the Raleigh County Sheriff's Department that a prisoner there said he knew people who knew about the crime. The prisoner, Robert Bolen, became a key witness for the prosecution and his statements allowed the State to find three other witnesses, Robert Goff, Paul Fink, and Denver Bailey.

Robert Goff testified that he had known Robert Bolen, the appellant, and the appellant's brother, Roger, for some time. In the summer of 1980, he had run into them and some others at the Blue Hole Lake. Goff "heard [Sam and Roger Acord] talking about raping a woman" in Raleigh County. He also testified that Roger Acord had a ring similar to a duplicate of the one which was stolen.[1] Corroborating Robert Goff, Paul Fink also remembered the night at Blue Hole Lake. "They were laughing about a girl down [in Raleigh County] that they had a good time with," and "Sam was wearing a big ring on his middle finger" similar to the duplicate ring.

Most damaging to the appellant's defense was the testimony of Robert Bolen and Denver Bailey. Bolen testified that he knew the appellant and his brother well. On the day of the crime, he and the Acords and others had been swimming and drinking at a local swimming hole. After dark but before midnight, he, the Acords, Denver Bailey, Donald Acord (the appellant's uncle), and David ("Dog") Gravely left the area in his 1966 Plymouth with Sam Acord driving. They drove to a point near the victim's residence, because they were

---

1. The stolen ring was never recovered, but the victim had a duplicate ring made after the robbery, which was introduced into evidence.

"planning on robbing the place." The appellant, his brother Roger, and "Dog" got out of the car and walked down the road toward the victim's residence. Those remaining sat in the car and listened to the stereo. The Acords and "Dog" were gone thirty to forty-five minutes. When they returned, they were carrying guns wrapped up in a blanket. They then drove to Ravenscliff and let off Denver Bailey. At some point in this excursion, Sam ran the car into an embankment and dented a fender. After the stop at the victim's house, he gave Bolen sixty dollars for the dent. Although Sam had had no money earlier that evening, Bolen testified that now he had "a lot" of money.

On a later date, at a campground in Fitzpatrick, Bolen found out what had happened when his three companions had left the car. Sam and Roger talked about "how they raped this lady." Roger showed Bolen a class ring (similar to the duplicate ring) and tried to sell it to him. Sam Acord told Bolen that they "got the ring, money, and a bunch of other stuff from the house," and talked about taping their victim's mouth with a piece of tape.

Denver Bailey was also a passenger in the car on the night of the rape. Bailey's testimony corroborated Bolen's. According to Bailey, the group had been drinking and went to a place behind the victim's house. Sam and Roger Acord and "Dog" got out of the car and went to the victim's house. Unlike Bolen, Bailey testified that he saw them go in the doorway, and said that the group returned carrying goods in a trash liner, instead of a blanket.[2]

The appellant's defense was one of "alibi." A former girlfriend of the appellant testified she had been with him in a trailer in his yard, or thereabouts, around midnight on the critical night of June 8th. The appellant also took the stand in his own behalf and also testified that he had been with the girlfriend.

The jury found the appellant guilty of sexual assault in the first degree and of committing a felony through the use of a firearm, from which verdict he appeals.

I.

At one point during the trial, a State witness, Robert Bolen, made an unsolicited remark indicating that he had passed a polygraph examination. The appellant's counsel immediately moved for a mistrial. The trial court denied the motion for a mistrial and instead instructed the jury to disregard the remark. We agree with the trial court's action.

It is true that polygraph test results are not admissible in evidence in a criminal trial in this State. *See* syl. pt. 2, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979). Therefore, error was committed when the witness referred to a polygraph test. Nevertheless, the statement was withdrawn and the jury was instructed to disregard it. "Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." Syl. pt. 18, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). While there are extraordinary situations where the introduction of evidence is so prejudicial that an instruction to disregard such evidence will be insufficient and a mistrial should be granted, *see, e.g., State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533, 542 (1982), this case was not one of those extraordinary situations.[3] We, therefore, hold that the trial court was correct in refusing the appellant's request for a mistrial.[4]

---

2. Among the errors alleged is that the evidence introduced at trial was insufficient to support the jury's verdict. Although the State presented no physical evidence linking the defendant to the crime, we find the testimony of these witnesses sufficient to support the jury's verdict.

3. Our decision is influenced by the fact that the witness's testimony was corroborated, at least in

part, by three other witnesses, and that the evidence was part of a four-day trial with a 955 page record. The danger of an individual error tainting the jury's decision grows less as the trial grows long.

4. The appellant in his brief submitted that this Court's decision in *Cannellas v. McKenzie*, 160 W.Va. 431, 435, 236 S.E.2d 327, 331 (1977) im-

## II.

Among the items stolen from the victim's house was a gold class ring that belonged to the victim's husband. The ring was never recovered. Because of the sentimental value attached to the ring, the victim had a duplicate made. The duplicate ring was identified by witnesses at trial as being similar to the one Roger Acord was trying to sell after the robbery and was admitted into evidence over appellant's objection that it would mislead the jury.

▮ We agree with the trial court's action in admitting the substitute ring into evidence. In its quest to find the truth, a jury should always be allowed to have the clearest evidence available. In this situation, the State could not show the jury the actual ring. The alternatives, therefore, were to either let the witnesses describe the ring, or to allow the witnesses to base their testimony on an exact duplicate of the actual ring. Unquestionably, the latter is more helpful to the jury. When an accurate physical replica of an unavailable object is helpful in clarifying a witness's testimony, that replica may, in the discretion of the trial court, be introduced into evidence. *See, e.g., Johnson v. State*, 574 S.W.2d 936, 939 (Mo.Ct.App.1978) (shopping bag); *Smith v. State*, 683 S.W.2d 393, 404–405 (Tex.Crim.App.1984) (cash register drawer). We see no evidence that the trial court abused its discretion in allowing the admission of the substitute ring and, therefore, conclude that there was no error in this regard.

## III.

The appellant also presents several other grounds of error not warranting lengthy discussion.

Before trial, the appellant requested that Denver Bailey, a State witness, be required to identify the appellant out of a line-up before he could testify. Instead, the State chose to have Mr. Bailey identify the appellant's picture out of a photographic array. The appellant, therefore, asserts that Denver Bailey should not have been allowed to testify. We disagree. There is no requirement that a State's witness must be able to identify the defendant in a line-up before he can testify, and, even if error had been committed, the evidence strongly indicated that Bailey had known the appellant well and would have no difficulty in recognizing him. Any error in the line-up would, therefore, have been harmless.

▮ When the appellant was arrested, he told the arresting officer that he did not want to talk about the case. He was cross-examined about this statement at trial. While this line of cross-examination may well have been error under syllabus point 1 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), the defendant failed to object to this point at trial. Generally, this Court will not consider an error for the first time on appeal. *See, e.g., State v. Parks*, 161 W.Va. 511, 515, 243 S.E.2d 848, 851 (1978). We see no reason to deviate from this rule in this case.

▮ Despite a defense request, the trial court failed to give an instruction on second degree sexual assault or sexual assault without the use of a weapon. The trial court was correct in refusing to instruct on the lesser included offense where the evidence did not warrant such an instruction. *See, e.g., State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902, 908 (1982). In this case, the victim testified unequivocally that three men held a gun to her during all of her

plies that a mistrial should be granted in any case where a polygraph test is mentioned. The appellant's reading of this case is erroneous. *Cannellas* involves a claim of ineffective assistance of counsel, where among several other errors, the defense counsel failed to move for a mistrial when prejudicial evidence concerning a polygraph test was admitted. While it is true that this case stands for the proposition that the

mention of a polygraph test *may* be grounds for a mistrial, and therefore the defense counsel should have so moved, there is nothing magic about this error which makes it deadlier poison than other errors. Therefore, our analysis of whether the mention of a polygraph test is grounds for a mistrial is the same as the analysis for any other error.

ordeal, and no evidence was presented to the contrary. Therefore, if the jury believed the victim's story to the extent that she was raped, they would have no reason to believe that a gun was not used.[5]

There being no errors by the trial court warranting reversal, the decision of the trial court is hereby affirmed.

Affirmed.

---

**5.** Other grounds of error, including the trial court permitting the State to introduce evidence that the petitioner assaulted a State's witness, that a private prosecutor was used, that the petitioner was not able to introduce evidence of his polygraph test, and that errors committed in this trial were cumulative, did not merit discussion, and we dismiss them summarily.