**David MEADOWS, Plaintiff–Appellee,**

v.

**Carl LEGURSKY, Defendant–Appellant.**

**Sam Blackburn ACORD,
Petitioner–Appellant,**

v.

**Jerry HEDRICK, Respondent–Appellee.**

**Nos. 86–6748, 87–7628.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1989.

Decided June 1, 1990.

As Amended June 7, 1990.

Rehearing and Rehearing In Banc
Denied in No. 87–7628
June 27, 1990.

Thomas J. Gillooly, Deputy Atty. Gen., Charleston, W.Va., for defendant-appellant in No. 86–6748 and plaintiff-appellee in No. 87–7628.

Deborah Lynn McHenry, Charleston, W.Va., for plaintiff-appellee in No. 86–6748. Lee H. Adler, Beckley, W.Va., for defendant-appellant in No. 87–7628.

Roger W. Tompkins, Atty. Gen., Charleston, W.Va., on the brief, for defendant-appellant in No. 86–6748 and plaintiff-appellee in No. 87–7628.

James A. McLaughlin, West Virginia University College of Law, Morgantown, W.Va., on the brief, for plaintiff-appellee in No. 86–6748.

Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting en banc.

K.K. HALL, Circuit Judge:

These consolidated cases raise questions about the role of the federal courts in deciding issues of constitutional law on collateral review of state court convictions. Sam Blackburn Acord appeals from the district court order dismissing with prejudice his petition brought pursuant to 28 U.S.C. § 2254. David Meadows' § 2254 petition was granted by the district court, but this Court, sitting *en banc*, reversed and remanded with instructions to dismiss the petition. The United States Supreme Court vacated this Court's judgment and remanded for reconsideration. We affirm the district court's judgment in Acord's appeal, but on different reasoning. After reconsideration of our previous judgment in Meadows' case, we now vacate the judgment of the district court and remand with instructions to dismiss the petition without prejudice for failure to exhaust.

## I—*ACORD*

In June 1983, Acord was tried in West Virginia for first degree sexual assault and related firearms charges. During his trial, he was cross-examined as follows:

Q. Okay, now, Trooper Hylton, who's seated over here, is the man who came down to Florida to get you in May with the warrant, wasn't he?

A. Yes, sir.

Q. All right, and you learned, when he got there he told you what you were charged with, didn't he?

A. Yes, sir.

Q. And then he went through the procedure of reading you your rights, didn't he?

A. Yes, sir.

Q. And you told him you weren't interested in talking with him about this, didn't you?

A. I told him I didn't know anything about it, which is the truth.

Q. Oh, you didn't tell him you didn't want to talk about it?

A. No, I just told him that I didn't know nothing about it, and he kept asking

me, and I just kept telling him I didn't know nothing about it.

Q. All right, so you not only didn't tell him that you didn't want to talk about it, but when you got up to Atlanta and you all met your brother, you didn't have a further conversation in which you all said you, jointly to him, that you didn't want to talk to him about it, that's your evidence?

A. I don't recall.

Mr. File (defense counsel): Objection, your honor, I don't believe there has been any mention of Atlanta from anyone.

A. We never was in Atlanta, by the way.

The Court: I think this is proper cross-examination. Proceed.

Trooper Hylton was presented as a rebuttal witness by the State and testified that Acord, after his rights were read to him, said he would not talk to Hylton about the charges. During the prosecutor's closing argument, he characterized Acord's post-Miranda reaction as "I don't want to talk about it." Acord was convicted of sexual assault and sentenced to a 10–20 year term of imprisonment.

On direct appeal to the West Virginia Supreme Court of Appeals, Acord argued that the prosecutor's questions and argument violated his Fifth Amendment right to remain silent. The state appeals court, however, disposed of this issue on the following reasoning:

When the appellant was arrested, he told the arresting officer that he did not want to talk about the case. He was cross-examined about this statement at trial. While this line of cross-examination may well have been error under syllabus point 1 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), the defendant failed to object to this point at trial. Generally, this Court will not consider an error for the first time on appeal. *See, e.g. State v. Parks*, 161 W.Va. 511, 515, 243 S.E.2d 848, 851 (1978). We see no reason to deviate from this rule in this case.

*State v. Acord*, 336 S.Ed.2d 741, 745 (W.Va.1985).

After the West Virginia court's denial of his petition for rehearing, Acord filed a § 2254 petition in the federal district court alleging, *inter alia*, a violation of his constitutional right to remain silent. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The case was referred to a magistrate who recommended that the *Doyle* claim be rejected on the merits because the questions on cross-examination " 'were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement' " (quoting *Anderson v. Charles*, 447 U.S. 404, 409, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980)). The district court adopted the report in full and denied relief on all claims. The district court granted a certificate of probable cause and Acord appeals.

## II

Acord contends that federal review of his *Doyle* claim is not foreclosed by the state court's reliance on a procedural bar for two distinct reasons. First, he argues that the West Virginia courts' inconsistent application of the procedural bar precludes a finding that it is an "adequate state ground" upon which federal review may be foreclosed. Second, Acord claims that the State waived its right to raise the procedural default issue by failing to properly raise it before the district court.[1] We address these issues in turn.

 A defendant's failure to observe a state's contemporaneous objection rule may be an "adequate and independent state ground" that bars federal habeas relief. *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977). This doctrine is a "well-established principle of federalism" which recognizes that a state's conduct of its criminal proceedings should be accorded respect by the federal

courts. *Id.* However, the "adequacy" component of the *Wainwright v. Sykes* doctrine is only satisfied if the procedural bar is "regularly or consistently applied" by the state court. *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). Our review of the decisions involving West Virginia's contemporaneous objection rule convinces us that this procedural bar satisfies this requirement of consistent application and, consequently, constitutes an "adequate and independent state ground" upon which federal review may be precluded.

In *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445, 457 (1974), the West Virginia court stated that it was "firmly committed" to the general rule that unobjected-to error will not be reviewed on appeal. It further noted that the court had "only deviated from [the general rule] on few occasions, and then only in extraordinary situations." *Id.* The extent of such deviation from the general rule is the basis of Acord's contention that West Virginia applies its contemporaneous objection rule in an inconsistent manner.

Acord cites *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), as the origin of the plain error rule by which the West Virginia courts will recognize errors of constitutional magnitude despite the lack of a contemporaneous objection at trial. This overstates the breadth of *Starr*. The court in *Starr* invoked a procedural rule of court[2] in order to reach an error which Starr had failed to assign in his opening brief. His counsel had in fact objected at trial. *Id.* 216 S.E.2d at 244. The plain error rule of *Starr* is nothing more than a vehicle by which the state appeals court may reach issues not properly raised in an appellant's brief.

Acord also cites *State v. Mullins*, 301 S.E.2d 173 (W.Va.1982), as an example of

---

**1.** Although not relied upon by the district court in dismissing Acord's *Doyle* claim, Acord anticipated the State's position on appeal and extensively briefed the issue of procedural default.

**2.** Rule IV, Section 2 of the Supreme Court Rules reads as follows:

... No alleged error or point, not set forth in the brief, shall be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing, but the court, at its option may notice a plain error not assigned or specified.

the state court's discussion of the merits of a possible *Doyle* violation despite the lack of an objection by defense counsel to the closing remarks of the prosecutor. The appeals court, however, found *no Doyle* violation, and it is not evident from the opinion whether the State even advanced the issue of procedural default. Moreover, in that very opinion, the court disposed of two other issues on procedural default grounds. *Id.* at 176–77.

Acord cites no other cases decided prior to his trial which would indicate inconsistent application of the state contemporaneous objection policy, and it is to this pre-trial period that we must look in ruling on this issue. *Johnson v. Muncy*, 830 F.2d 508, 514 (4th Cir.1987). We also recognize that consistent or regular application of a state's procedural default rules does not mean undeviating adherence to such rule admitting of *no* exception. *See Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989) (despite possible exceptions, the procedural bar at issue was applied by Florida's highest court "[i]n the vast majority of cases"). In the absence of a clearer showing by Acord, we believe the state court's declaration of its "general rule" in *Thomas* should be afforded respect. *Thomas*, 203 S.E.2d at 457.[3] We hold, therefore, that the procedural default posited by the state court is an "adequate and independent state ground" upon which federal habeas review may be precluded.

*Wainwright v. Sykes* announced a "cause and prejudice" doctrine which permitted habeas petitioners to escape the effect of a procedural default. 433 U.S. at 87–91, 97 S.Ct. at 2506–09. Acord concedes that the "cause" component of the test could not be satisfied by a contention that his trial lawyer was unaware of the *Doyle* doctrine. *See Murray v. Carrier*, 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644–45, 91 L.Ed.2d 397 (1986) (trial counsel's failure to

recognize a basis for a claim does not constitute cause for a procedural default). Thus, absent a showing of cause to excuse the default, we cannot reach the merits of Acord's claim unless the alleged *Doyle* violation was so severe that it "has probably resulted in the conviction of one who is actually innocent...." *Id.* at 496, 106 S.Ct. at 2649. Our review of the record shows that this is not such an "extraordinary case" which would mandate the granting of the writ despite the absence of cause for the procedural default. *Id.* Therefore, Acord is not entitled to habeas relief on this claim.

### III

■ Acord also contends that the State is precluded from relying on the asserted bar before this Court because it chose not to raise the procedural bar rule in proceedings before the magistrate and district court, choosing instead to argue the *Doyle* claim on its merits. Acord further points to the State's failure to object to the magistrate's findings which were adopted *in toto* by the district court. We believe, however, that the procedural bar was satisfactorily raised below as to defeat Acord's "waiver of waiver" argument.

Recently this Court held that the state's failure to expressly assert procedural default during habeas proceedings at the district court level did not constitute a "waiver of waiver" when the procedural default was before the district court by virtue of the admission into the record of the state court's decision which relied on such a default to bar consideration of the disputed constitutional claim. *Titcomb v. Commonwealth of Va.*, 869 F.2d 780, 782–84 (4th Cir.1989). Here, the state court's decision in Acord's appeal was admitted into evidence before the federal magistrate, so the "waiver of waiver" argument is meritless. In sum, although on different reasoning,

---

**3.** After the initial briefs were filed in this appeal, the parties were directed to supplementally brief the "inconsistent application" issue in light of decisions rendered by the West Virginia Supreme Court of Appeals subsequent to Acord's trial in June 1983. We believe, however, that these decisions are irrelevant to the status of the state's contemporaneous objection rule at the time of Acord's trial, and the recognition of limited exceptions to the general rule does not convince us that the rule was not consistently applied at the time of Acord's trial.

we affirm the judgment of the district court.

## IV—*MEADOWS*

David Meadows was convicted in West Virginia of first degree murder and the conviction was upheld on direct appeal. *State v. Meadows*, 304 S.E.2d 831 (W.Va. 1983). His § 2254 petition was granted by the district court on the ground that the alibi instruction at trial unconstitutionally shifted the burden of proof on an essential element of the crime. Sitting *en banc*, this Court determined that Meadows' failure to observe West Virginia's contemporaneous objection rule was sufficient to deny habeas relief, and the district court's judgment was reversed. *Meadows v. Holland*, 831 F.2d 493 (4th Cir.1987) (*Meadows I*). The U.S. Supreme Court vacated the judgment and remanded the case for reconsideration in light of its decision in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).[4] *Meadows v. Holland*, — U.S. —, 109 S.Ct. 1306, 103 L.Ed.2d 575 (1989). The facts preceding our prior consideration of the *Meadows* case are extensively recited in *Meadows I* and will not be repeated here. However, we must amplify certain matters pertaining to Meadows' presentation of his alibi instruction issue to the state courts because the focus of our analyses has necessarily shifted after remand from the Supreme Court.

On direct appeal of his conviction to the West Virginia Supreme Court of Appeals, Meadows failed to raise the claim that the alibi instruction unconstitutionally shifted the burden of persuasion. This omission occurred after this Court's decision in *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), in which we held that a similar instruction unconstitutionally relieved the state of its burden of having to prove every element of a charge beyond a reasonable doubt. *Id.* at 282. Although the state supreme court majority

did not discuss the issue, the lone dissenter noted that our decision in *Adkins* meant that the burden-shifting instruction "could not be harmless error." 304 S.E.2d at 842 (Harshbarger, J. dissenting).

Meadows filed his pro se habeas petition in the state circuit court pursuant to W.Va. Code § 53–4A–1 (1981) and, for the first time, raised the *Adkins* issue. The circuit court construed the majority's opinion in the direct appeal as having reached the merits of the *Adkins* issue and thus it denied relief on this and all other claims raised by Meadows. Still proceeding pro se, Meadows filed the identical habeas petition with the West Virginia Supreme Court of Appeals instead of appealing the circuit court's dismissal. The appeals court interpreted the filing as an attempt to invoke the court's original jurisdiction in habeas corpus matters and, as is its practice, denied the petition without prejudice. *See McDaniel v. Holland*, 631 F.Supp. 1544 (S.D.W.Va.1986). Meadows then abandoned all further attempts at recourse in the state courts and initiated his habeas petition with the federal district court. He again raised the *Adkins* issue and the district court agreed with the magistrate's recommendation that habeas relief should be granted on the basis of the constitutionally infirm alibi instruction. The district court also adopted the magistrate's finding that the alibi instruction was clearly submitted to both the state circuit and appeals courts "in a meaningful manner alleging the appropriate constitutional infirmities." *Meadows v. Holland*, C/A 1:85–0798 (S.D. W.Va., Aug. 7, 1986). In *Meadows I*, we declined to reach the exhaustion issue. 831 F.2d at 496 n. 4.

## V

■ On remand from the Supreme Court, there is no question that the state court did not rely on a procedural default with respect to Meadows' *Adkins* claim. Renewing an argument raised during the

---

**4.** In *Harris*, the Supreme Court held that a state "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a

judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." 109 S.Ct. at 1043.

initial federal habeas proceeding, the State contends that Meadows did not fully exhaust his state remedies because he failed to appeal the state circuit court's denial of a writ. Meadows counters that his failure to appeal the circuit court's order should be excused because he was proceeding pro se and is untrained in the law. Alternatively, he argues that his petition to the state appeals court satisfied exhaustion principles because the lower court's order was attached to his petition.[5] We are persuaded by the State's argument.

Exhaustion of state remedies prior to the pursuit of federal habeas relief is mandated by 28 U.S.C. § 2254(b), (c).[6] The statute requires a dismissal for failure to exhaust if an effective state remedy is available at the time of filing of the federal habeas petition. West Virginia's adherence to equitable principles in its treatment of finality in habeas matters allows us to confidently predict that Meadows will be permitted to refile his habeas petition in the state circuit court. *See Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981). Given that Meadows was proceeding pro se at the state habeas level, that the circuit court's failure to decide the *Adkins* issue was apparently not due to any waiver by Meadows, and that his failure to appeal the circuit court's order was apparently not an attempt to bypass state appellate review, we are convinced that it is likely that further state habeas review is still available to Meadows. See *Harris v. Reed*, 109 S.Ct. at 1046 (O'Connor, J., concurring) ("[I]n determining whether a remedy for a particular constitutional claim is 'available,' the federal courts are authorized, indeed required,

to assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim").

## VI

Having decided that Meadows' *Adkins* claim is unexhausted, we turn to the related question of whether exhaustion should be invoked in light of the State's contention that it is clear that the West Virginia court would hold the *Adkins* claim procedurally barred. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989). The non-jurisdictional exhaustion doctrine is indeed flexible enough to allow exceptions in cases in which forcing a petitioner to go back to state court would be an obvious exercise in futility. *See Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989). We do not find this to be the case here, however. If any reasonable possibility exists that the state court may apply an exception to its procedural default rule, the federal court should not apply a state procedural bar to find that exhaustion is futile. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983).

In *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.1982), we were presented with a habeas petitioner who, like Meadows, had failed to object to a similar burden-shifting alibi at trial and who had also failed to raise the burden-shifting issue before the West Virginia state courts. In response to the State's argument that Adkins failed to exhaust his state remedies, this Court held that the exhaustion requirement of 28

---

**5.** Although Meadows argues that the state appeals court considered the claim when it quoted the objected-to instruction (304 S.E.2d at 839–40), it is clear that the instruction claim raised and disposed of dealt with the trial court's refusal to give another alibi instruction offered by Meadows on the grounds that it was repetitious. Nowhere is there any indication that the burden-shifting aspect of the instruction was considered by the majority.

**6.** Title 28 U.S.C. § 2254(b) and (c) read as follows:

 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant

to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

 (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

U.S.C. § 2254(b) was satisfied because "to force Adkins now to pursue his claim before the West Virginia court would be but a futile directive." *Id.* at 282. The futility of demanding exhaustion in *Adkins,* however, arose from this Court's view that the state court had incorrectly denied a similar claim on the merits and, therefore, recourse to the state court would merely provide that court with an opportunity to reaffirm its previous error. In light of our holding in *Adkins* regarding the constitutional infirmity of the alibi instruction, we cannot say that it would now be an "empty formality" to demand exhaustion by Meadows. We believe a reasonable possibility exists that the state court may decide to reach the merits of Meadows' *Adkins* claim despite the failure to object at trial. Therefore, we reverse the order of the district court and remand with instructions to dismiss Meadows' petition, without prejudice, because of his failure to exhaust state remedies.

86–6748—REVERSED AND REMANDED WITH INSTRUCTIONS.

87–7628—AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

In both the consolidated cases of *Acord v. Hedrick* and *Meadows v. Legursky,* I am constrained to dissent. I turn my attention first to *Acord v. Hedrick.*

I

The case would present a comedy of errors except for the fact that it is no comedy but rather a tragedy. Acord was tried, from June 9 to June 13, 1983, for aggrava-

ted sexual assault, being convicted on the latter date. At the trial, a private prosecutor, who was aiding the public official, attacked Acord's post-arrest silence. Acord had held his peace in two interrelated ways: (1) he said he did not know anything about the crime and (2) he said he would not talk about it. Both statements indicated that he would remain silent. That silence was insulated against comment at trial by the holding in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *Accord State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977) (Syllabus Point 1: under the Due Process Clause of the West Virginia Constitution, as well as the presumption of innocence and the right against self-incrimination embodied therein, a prosecutor's cross-examination of a defendant about his post-arrest silence, or a prosecutor's comment on the same to the jury, constitutes reversible error). Despite the constitutional prohibition, the prosecutor's clear message to the jury was that Acord's post-arrest silence indicated that his alibi story must be an after-the-fact fabrication.[1]

Not surprisingly, Acord's counsel sought to object to a line of questioning along that line, but, even before a precise objection could be phrased, the trial judge interjected that he felt the line of inquiry was "proper cross-examination," peremptorily stating it to be permissible, and adding the decisive command to "[p]roceed." Pursuit of the unconstitutional line of inquiry continued.

The trial judge must have seen a contradiction between "I don't know anything about the crime" and "I don't care to talk."[2] To me there is no inconsistency.[3]

---

**1.** The private prosecutor said to the jury:

And that boy's testimony, he wants you to think, no I had nothing to do with it, didn't know anything about it and so on. When he was asked about it, what was his reaction, and given his rights on it? I don't want to talk about it. Sandy [the victim] gave a six-page statement the next day. She told all she knew about it, but I don't want to talk about it.

**2.** In *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the Supreme Court held that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsist-

ent statements." *Id.* at 408, 100 S.Ct. at 2182. *Anderson v. Charles* involved not preservation of silence in both non-statements but rather positive assertions fatally contradictory with one another.

**3.** *See Wainwright v. Greenfield,* 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 640 n. 13, 88 L.Ed.2d 623 (1986) ("we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent as well as of a desire to remain silent until an attorney has been consulted").

Both non-statements came down to "I choose to remain silent."[4]

Subsequent to Acord's conviction, on direct appeal to the West Virginia Supreme Court of Appeals, the issue of the prosecutor's wrongful invasion of Acord's right to remain silent was shown not to have been asserted at the trial level by the lawyers representing Acord.[5] *State v. Acord,* —— W.Va. ——, ——, 336 S.E.2d 741, 745 (W.Va.1985). However, there was substantial West Virginia authority stating that the contemporaneous objection rule, which precludes argument on appeal of an issue not raised at trial, would not be applied to foreclose the raising of an issue by the defendant if it involves a plain error of constitutional dimension. *See infra.*

The *Doyle* case is indisputably of federal constitutional dimension. The plainness of the error is not in doubt. "The prosecutor was either ignorant of the proscription against such inquiry set forth in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), or he intentionally set out to violate *Doyle.* In either case, the State does not hereby express her pleasure at such a state of affairs." Brief for West Virginia, at 9.

The West Virginia Supreme Court of Appeals noted that it, however, would not consider the matter on the merits because of the failure to comply with the West Virginia contemporaneous objection rule. *Acord,* 336 S.E.2d at 745. But the court went on to say that there "may well have been error" in cross-examining Acord on his statement that he did not want to talk about the case. *Id.*

Nevertheless, the United States District Court for the Northern District of West Virginia, considering Acord's attempt to obtain habeas corpus relief, accepted that the matter was before it *on the merits.* It did so with no more than the slightest token objection by the State of West Virginia, which proceeded to argue a faulty theory on the merits that the federal district court regrettably was persuaded to adopt.

The *en banc* majority, in the name of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), while recognizing the existence of West Virginia's "plain error" exception, today decides that the West Virginia Supreme Court of Appeals has the authority to "exercise its discretion" to toss off a few obscure words that do not clarify, but merely announce by way of ukase which plain errors are capable of being raised despite lack of contemporaneous objection and which are not. Such a "length of the Chancellor's foot" approach[6] does not comport with federal constitutional procedures.

---

4. That point was made crystal clear when, in the federal habeas corpus proceeding, the West Virginia prosecutor acknowledged that "the petitioner's statement was *fairly* consistent with what the State's witness purported it to be." The stark difference in assessment of Acord's silence may reflect the fact that a public prosecutor's objective should be to see justice achieved while a prosecutor retained by the victim or her family likely saw his duty as obtaining conviction by any means. *See State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977) (Syllabus Point 3: "The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.").

5. Acord's unsuccessful appeal focused to a large extent on the testimony of Acord's former girl-

friend, the wife of a local law enforcement officer's nephew, who afforded Acord an alibi of being with her elsewhere at the time of the rape. She did so although her husband was, she told the jury, afraid of what his family might think of her involvement. Her relationship with Acord had essentially been discontinued long before the crime occurred.

Acord took the stand and corroborated the former girlfriend's fully supportive testimony. The State presented *no witness who could place* Acord with the victim on the night she was sexually assaulted. The two witnesses who testified that Acord was one of the three masked attackers were to be rewarded by the State for their cooperation with reduction of pending felony charges, which resulted in their avoiding incarceration.

6. "[A]s if they should make [the Chancellor's] foot the standard ... measure; what an uncertain measure would this be! One Chancellor has a long foot, another a short foot, a third an indifferent foot; 'tis the same thing in the Chancellor's conscience." John Selden, *quoted in*

In *Wainwright v. Sykes*, the Supreme Court held that a petitioner's failure to comply with the state's contemporaneous objection requirement at trial foreclosed habeas corpus review by a federal court of the petitioner's state court conviction. *Id.* at 86–87, 97 S.Ct. at 2506–07. Because of federalism concerns, the state's procedural rule constituted an "adequate and independent state ground" for upholding the state court conviction, notwithstanding the fact that the conviction was allegedly tainted by constitutional error. *Id.* at 81, 97 S.Ct. at 2503–04. But the Supreme Court has also held that "a state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.'" *Hathorn v. Lovorn*, 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982) (in context of Supreme Court's review of state court decision); *see also Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). "State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply *evenhandedly* to *all* similar claims." *Hathorn*, 457 U.S. at 263, 102 S.Ct. at 2426 (emphasis added). And the question of the adequacy of a state's rule as a procedural bar to constitutional claims is itself a matter of *federal law. Henry v. Mississippi*, 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965).

The need for the vindication of important constitutional rights outweighs the federalism concerns of paying deference to indeterminacy. The majority's approach also accords ill with the observation that "the nature of a *Doyle* error is so egregious and so inherently prejudicial [that] reversal is the norm rather than the exception." *Alston v. Garrison*, 720 F.2d 812, 817 (4th Cir.1983) (quoting *Williams v. Zahradnick*, 632 F.2d 353, 363 (4th Cir.1980)), *cert. denied*, 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984).

As for the arbitrary nature of West Virginia's application of its contemporaneous objection requirement, one need only examine the following cases:

McClintock, *Handbook of the Principles of Equity* 50 n. 8 (2d ed. 1948), *and* W. Holdsworth, I *A*

1. *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974): The West Virginia Supreme Court held, despite the defendant's failure to object at trial, that the defendant was deprived of a fair trial because incompetent and unconstitutionally seized evidence was introduced. "[A]ll courts when confronted with a situation involving the fundamental personal rights of an individual, have considered unassigned errors, if meritorious and prejudicial, as jurisdictional, or have noticed them as 'plain error.' ... [T]he rule is fashioned and applied to meet the ends of justice or to prevent the invasion of or denial of fundamental rights." 203 S.E.2d at 457. (Hence, the majority's attempts to put forth *Thomas* as supportive of its position dumbfounds me.)

2. *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975): "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, *this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution.*" Syllabus Point 4, 216 S.E.2d at 244. The West Virginia Supreme Court reversed Starr's conviction, despite his failure properly to preserve his objection for review, because an incriminating post-arrest statement made by Starr was introduced without a proper inquiry into its voluntariness. *Id.* at 248.

3. *Spaulding v. Warden*, 158 W.Va. 557, 212 S.E.2d 619 (1975): The West Virginia Supreme Court stated that allegations of error that do not have a "constitutional or jurisdictional basis" were "lost to the defendant by his failure to file notice of intent to appeal." 212 S.E.2d at 621.

4. *Jones v. Warden*, 161 W.Va. 168, 241 S.E.2d 914, *cert. denied*, 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed.2d 125 (1978):

*History of English Law* 467 (1903–1938).

The West Virginia Supreme Court addressed the merits of a burden-shifting instruction, notwithstanding the defendant's failure to make a proper objection at trial, because "[s]afeguarding the integrity of the factfinding process must take priority over procedural concerns." 241 S.E.2d at 916. The court "declined to resort to such a trap of procedure, the last avenue of escape for the third rate legal technician.... It seems utterly nonsensical to deprive an innocent man of his liberty because his lawyer failed [to object] at his trial...." 241 S.E.2d at 917 (Neely, J., concurring).

5. *Adkins v. Bordenkircher,* 674 F.2d 279 (4th Cir.), *cert. denied,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982): In an enlightened opinion by the late Judge Albert V. Bryan, we rejected West Virginia's procedural foreclosure argument and reviewed the merits of a petitioner's habeas corpus claim, despite his failure to object at trial. 674 F.2d at 282. After a review of West Virginia authorities, we concluded that the State would not allow its contemporaneous objection rule to forestall a constitutional challenge. *Id.*

6. *State v. Mullins,* — W.Va. —, 301 S.E.2d 173 (1982): The West Virginia Supreme Court, in the very last West Virginia case on the subject prior to Acord's trial and conviction, considered the merits of the defendant's claim of a *Doyle* violation *despite* the lack of the defendant's objection at trial. 301 S.E.2d at 177.

7. *State v. Oxier,* — W.Va. —, 338 S.E.2d 360 (1985): The West Virginia Supreme Court held that the prosecutor's cross-examination and comment constituted reversible error based on the *Doyle* principle, notwithstanding the defendant's failure to object properly at trial. 338 S.E.2d at 363. The court distinguished other West Virginia cases that held that an error not raised at trial is waived: "More germane to the present case involving as it does an error of constitutional di-

mension is Syllabus Point 4 of *State v. Starr.*" *Id.* (citations omitted). The court noted that two other state supreme courts had considered a *Doyle* violation to be "plain error." *Id.* (citing *Dorman v. State,* 622 P.2d 448 (Alaska 1981), and *State v. Lyle,* 73 N.J. 403, 375 A.2d 629 (1977) (per curiam)).

8. *State v. Barker,* — W.Va. —, 346 S.E.2d 344 (1986): The West Virginia Supreme Court reversed the defendant's conviction, despite the lack of specific objection at trial, because a jury instruction omitted one of the elements of the crime. 346 S.E.2d at 349. "Failure to afford a criminal defendant the fundamental right to have the jury instructed on all essential elements of the offense charged has been recognized as plain error." *Id.*

9. *State v. Judy,* — W.Va. —, 372 S.E.2d 796 (1988): The West Virginia Supreme Court held that a double jeopardy violation constituted plain error "due to its constitutional implications." 372 S.E.2d at 798 n. 2. As plain error, the Supreme Court addressed the claim despite the fact that the defendant failed to make an objection at trial. *Id.*

10. *State v. Moss,* — W.Va. —, 376 S.E.2d 569 (1988): The West Virginia Supreme Court held that it "need not decide whether the [defendant] complied with the contemporaneous objection requirement" as it "conclude[d] that the prosecutor's statements were egregious enough ... to invoke the plain error doctrine." 376 S.E.2d at 574.

11. *State v. Marrs,* — W.Va. —, 379 S.E.2d 497 (1989): The West Virginia Supreme Court invoked the plain error doctrine to review an allegedly discriminatory use of the prosecution's peremptories when the defendant failed to object at trial. 379 S.E.2d at 500.

12. *State v. Hanson,* — W.Va. —, 382 S.E.2d 547 (1989): The West Virginia Supreme Court reviewed the defendant's claims that the trial court admit-

ted into evidence incriminating statements elicited in violation of the fifth amendment despite the fact that the defendant was deemed to have waived his objection by not pursuing it below. 382 S.E.2d at 552. The court opined, "We believe this is an appropriate case for application of the [plain error] doctrine, not only because the Fifth Amendment protection against self-incrimination, a substantial constitutional right, is affected, but also because the admission of these statements had a substantial impact on the jury's truth-finding function." 382 S.E.2d at 552.

13. *State v. Stacy,* —— W.Va. ——, 384 S.E.2d 347 (1989): The West Virginia Supreme Court applied the plain error exception to review an allegedly improper jury instruction. 384 S.E.2d at 352. The court did so because the error was of constitutional magnitude and substantially impaired the trial court's truth-finding function. *Id.*

In Acord's case, the error was plain and egregious and fundamentally interfered with the truth-finding function. That is so as a matter of federal law, no matter how inconsistent the West Virginia Supreme Court of Appeals is in defining those terms.

The first intimation that West Virginia might enforce its contemporaneous objection rule even in the case of an error of constitutional magnitude was *State v. Kopa,* 311 S.E.2d 412 (W.Va.1983), which first saw the light of day in a case decided more than six months *after* Acord was tried and convicted. Also decided after he was tried *and hence not available to Acord's counsel* were *State v. Hutchinson,* 342 S.E.2d 138 (W.Va.1986); *Meadows v. Holland,* 831 F.2d 493 (4th Cir.1987) (*en banc*), *vacated and remanded,* —— U.S. ——, 109 S.Ct. 1306, 103 L.Ed.2d 575 (1989); *State v. Fisher,* 370 S.E.2d 480 (W.Va.1988); *State v. Grubbs,* 364 S.E.2d 824 (W.Va.1987); *State v. Hatala,* 345 S.E.2d 310 (W.Va.1986); and *State v. England,* 376 S.E.2d 548 (W.Va.1988).

Indeed, the majority only cites *one* case, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), to demonstrate a *regularity* in the application of West Virginia's contemporaneous objection requirement. And the citation to that case is misleading. The West Virginia Supreme Court was disturbed by the admission of certain evidence in Thomas' trial in spite of his lack of objection. 203 S.E.2d at 457. The *Thomas* court held that it had to waive the state's procedural requirement to meet the ends of justice. *Id.* *The court thereupon addressed the merits of Thomas' objection.* Rather than support the majority's position, *Thomas* demonstrates that West Virginia waives the contemporaneous objection requirement when the denial of a constitutional right deprives the defendant of a fair trial.

The majority concludes that no cases decided prior to Acord's trial indicate an inconsistent application of West Virginia's contemporaneous objection requirement. *Thomas, Starr, Spaulding, Jones, Adkins,* and *Mullins* belie that conclusion. *Oxier, Barker, Judy, Moss, Marrs, Hanson,* and *Stacy,* although decided after Acord's conviction, serve to amplify the only conclusion that one can reach: West Virginia has and does apply its plain error exception to review egregious errors of constitutional magnitude, and, indeed, in particular even alleged *Doyle* violations.

West Virginia lacks an *adequate* ground for refusing to consider the merits in Acord's case involving plain constitutional error amounting to a miscarriage of justice. Because there was no regularly followed West Virginia rule requiring contemporaneous objection by Acord on June 13, 1983, when Acord was convicted, the lack of consistency renders altogether inappropriate application of the state rule as a procedural bar under *Wainwright v. Sykes.*

"A state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.'" *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988) (citing *Barr v. City of Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964)); *cf. County Court of Ulster County v. Allen,* 442 U.S. 140, 151 & n. 10, 99 S.Ct. 2213,

2221 & n. 10, 60 L.Ed.2d 777 (1979); *see also Reynolds v. Ellingsworth,* 843 F.2d 712, 719–21 (3d Cir.) (in order for procedural requirement to bar a review of petitioner's claim, state's invocation must be "consistent with other state authority"), *cert. denied,* — U.S. —, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988); *Williams v. Lane,* 826 F.2d 654, 659 (7th Cir.1987) (state procedural requirement does not bar federal habeas corpus review when requirement is "sporadically applied"); *Oliver v. Wainwright,* 795 F.2d 1524 (11th Cir.1986) ("[w]here the state applies its procedural bar only sporadically ..., a federal court may entertain a petition for the writ") (citing *Spencer v. Kemp,* 781 F.2d 1458, 1470 (11th Cir.1986) (*en banc*)), *cert. denied,* 480 U.S. 921, 107 S.Ct. 1380, 94 L.Ed.2d 694 (1987).

In my judgment, the *Doyle* violation necessitates a new trial mandated by the law of habeas corpus. That will not by any means guarantee Acord's freedom. It will only insure that his conviction, if there is to be one, will be accomplished by constitutional means. That *proper* conviction under *proper* interpretation of the law is as much an objective of the West Virginia prosecutors as it is of the defendant himself. The state wins when justice is done in its courts. I find abhorrent the argument that West Virginia judges should be exposed to the temptation of being able to say "yea" or "nay" solely on the basis of how they feel without expressing any cognizable difference between categories of plain error or even whether constitutional plain error is amenable to such hair-splitting categorization. That backing and filling in the law's application has substantial due process defects.

## II

Turning to *Meadows v. Legursky,* we have been directed by the Supreme Court to consider further the opinion in *Meadows v. Holland,* 831 F.2d 493 (4th Cir.1987) (*en banc*), in the light of *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). *Meadows v. Holland,* — U.S. —, 109 S.Ct. 1306, 103 L.Ed.2d 575 (1989). It is reasonable to assume that the Fourth Circuit majority opinion was not in all respects satisfactory to the Supreme Court.

The *en banc* majority opinion in *Meadows v. Holland* had relied on *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to justify its refusal to consider a plainly erroneous jury instruction, commencing "The Court instructs the jury that while the burden of proving an alibi is on the defendant...." That instruction was improper, casting the burden on the defendant whereas it properly should, beyond a reasonable doubt, fall upon the prosecution.[7] *Fulton v. Warden,* 744 F.2d 1026, 1031 (4th Cir.1984) ("There can be little doubt that both instructions [shifting the government's burden of proving presence to the defendant] are constitutionally infirm."), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 655 (1985); *Adkins v. Bordenkircher,* 674 F.2d 279, 282 (4th Cir.), *cert. denied,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982); *see also Mullaney v. Wilbur,* 421 U.S. 684, 702, 95 S.Ct. 1881, 1891, 44 L.Ed.2d 508 (1975).

The Fourth Circuit majority reasoned that Meadows had failed to object to the form of the alibi instruction at trial, thereby committing a procedural default which operated to preclude habeas corpus relief.[8] While technically there may not have been in so many words an objection to the faulty instruction, there was the substantial

---

**7.** At trial, Meadows principally relied on an alibi defense, placing critical importance on the correctness of the instructions.

**8.** To do so, the majority had to overrule an earlier holding to the contrary by a distinguished panel consisting of Judge Albert V. Bryan, Judge Donald S. Russell, and Judge James M. Sprouse. *Adkins v. Bordenkircher,* 674 F.2d 279, 282 (4th Cir.) (West Virginia's contemporaneous objection rule does not forestall constitutional challenge), *cert. denied,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). That overruling occurred six years after Meadows was tried; thus it was not available to counsel for Meadows who reasonably could rely on the West Virginia cases as outlined in Part I, *supra,* recognizing unpreserved constitutional errors to be "plain error."

equivalent: a request by Meadows for an instruction that "if the state has failed to prove beyond all reasonable doubt that David Meadows was at the scene of the crime at the time of the slaying ... then the jury shall find David Meadows not guilty." Remarkably and plainly erroneously, the State's objection to that instruction was sustained on the grounds of repetitiousness of the instruction that altogether contradictorily and improperly saddled the defendant with the burden of proof. *State v. Meadows,* —— W.Va. ——, 304 S.E.2d 831, 839–40 (1983).[9]

We must carry out the Supreme Court's mandate and examine the holding of *Harris v. Reed* as it affects our earlier opinion. *Harris v. Reed* principally holds that a state must *clearly express* its reliance on a procedural default for that default to preclude a federal court from granting habeas corpus relief. 109 S.Ct. at 1043. A perusal of the West Virginia Supreme Court's opinion in *State v. Meadows,* 304 S.E.2d 831 (W.Va.1983), especially at pages 839 and 840, shows that the court did not state its reliance on a procedural bar at all and, *a fortiori,* not "clearly and expressly." The "plain statement" requirement of *Harris v. Reed* was simply not met.

Avoidance of ambiguity and its difficulties has been a guiding objective of the "adequate and independent" requirement of the procedural default rule. *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983); *Harris v. Reed,* 109 S.Ct. at 1041–42. Here we have a classic case of ambiguity when a jury instruction requested by the defendant—an obviously correct one—is rebuffed, yet the defendant is faulted for not having argued against the precise opposite. That comes down to a holding that one failed to reveal an intent not to say "No" when one says "Yes." Playing with semantics in a murder case where conviction was obtained on purely circumstantial evidence and the burden of proof was wrongly assigned is suspect. A defendant may show "a fundamental miscarriage of justice" to excuse his failure to comply with a technical rule. *Harris v. Reed,* 109 S.Ct. at 1043 (citing *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)). Here there emanates an odor of injustice because Meadows' conviction flows from an incorrect burden of proof instruction relieving the prosecution of the proof-beyond-a-reasonable-doubt requirement imposed by the Constitution—in a case where all the evidence was circumstantial.

The majority, after *en banc* rehearing following vacation by the Supreme Court, now suggests that Meadows never presented his constitutional claim to the West Virginia Supreme Court at all, thereby obligating him to pursue the post-conviction remedies offered by the State. Although the majority notes that Meadows did collaterally attack his conviction in state court, the majority faults Meadows for filing *de novo* in the West Virginia Supreme Court of Appeals rather than appealing from the *nisi prius* West Virginia court's denial of its jurisdiction. That is no more than an excessively technical requirement that a criminal defendant must linger in prison while finespun grains of wheat are ground to a foregone conclusion.

Because the West Virginia Supreme Court of Appeals had a "fair opportunity" to rule on the merits of Meadows' constitutional claim, he should not be obligated to pursue state collateral relief. The majority focused only on what the West Virginia Supreme Court of Appeals "considered" in determining that Meadows was required to exhaust his claim. Such a constriction of analysis is incorrect. The Court should

---

9. Justice Sam R. Harshbarger of the West Virginia Supreme Court of Appeals, in dissent, had no difficulty in recognizing the constitutional error:

> However, the instructions were infirm because that particular alibi instruction has been found to impermissibly shift the burden of proof to a defendant. *State ex rel. Adkins*

*v. Bordenkircher,* 517 F.Supp. 390 (S.D.W.Va.), *affirmed,* 674 F.2d 279, 282 (4th Cir.1982), *cert. denied,* [459] U.S. [853], 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). Also, *Adkins* held that West Virginia's former burden-shifting approach to alibi defenses could not be harmless error. *Id.,* 517 F.Supp. at 399–400.

304 S.E.2d at 842 (Harshbarger, J., dissenting).

focus not on what the state supreme court "considered," but on what that court had the "opportunity to consider." *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Whittlesey v. Circuit Court,* 897 F.2d 143, 145 (4th Cir. 1990). In other words, the Court should ask if it was "likely" that the state court was alerted to the claim's constitutional nature. *See Daye v. Attorney General,* 696 F.2d 186, 192 (2d Cir.1982), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). The West Virginia Supreme Court of Appeals clearly was alerted to the merits of Meadows' constitutional claim, particularly given Justice Harshbarger's dissent on that ground. The majority's holding ignores a Third Circuit holding that exhaustion was not required when a state judge's dissent, much the same as Justice Harshbarger's dissent, demonstrated that the state court had been alerted to the merits of the claim. *See Sullivan v. Cuyler,* 723 F.2d 1077, 1083 (3d Cir.1983) ("It is clear from [the dissenting judge's] characterization ... that Sullivan's due process claim was not only presented, but was considered by the state court.").

Furthermore, Meadows should not be required to appeal the state court's determination that the state courts were without jurisdiction to hear the merits of his claim. Section 2254 does not require exhaustion if it is apparent that state collateral relief is not available to the petitioner. *See* 28 U.S.C. § 2254(b); *Teague v. Lane,* 489 U.S. 288, ——, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (citing *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1385–86 (7th Cir.1974)). In *Brantley,* the Seventh Circuit did not require the petitioner to appeal a state court's dismissal of his post-conviction petition when the dismissal was based on a jurisdictional rule that precluded post-conviction review of issues that could have been raised on direct review. 502 F.2d at 1385. The Seventh Circuit stated, "We refuse to contribute further needless and delaying requirements to a procedure that already often results in shuttling prisoners back and forth between the state and federal courts before any decision on the merits is ever reached." *Id.* at 1385–

86; *see also United States ex rel. Diggs v. Russell,* 320 F.Supp. 640, 640 (E.D.Pa.1970) (petitioner exhausted remedies when state habeas petition dismissed by state court for lack of jurisdiction), *aff'd,* 457 F.2d 933 (3d Cir.1972).

Here, too, the state court dismissed Meadows' habeas petition and denied jurisdiction to entertain Meadows' claim because, in its view, the claim had been considered by the West Virginia Supreme Court of Appeals on direct review. *See* W.Va.Code § 53–4A–1(a) (1981). Yet the majority, without explication, requires Meadows to exhaust the state court's determination that he cannot further exhaust the merits of his constitutional claim. The majority's holding is inconsistent with *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), in which the United States Supreme Court stated that questions under § 2254 should be resolved by determining whether the need for comity outweighs the impairment of federal relief that would result by requiring exhaustion. 455 U.S. at 522, 102 S.Ct. at 1205. Requiring a habeas petitioner to appeal a state court's denial of jurisdiction, in a case where the right to relief is apparent, substantially impairs the prisoner's interest in speedy relief without significantly contributing to the comity concerns advanced by the exhaustion doctrine. When a state court denies jurisdiction to review the merits of a constitutional claim, the interference caused by subsequent federal review seems insignificant. It is unsupportable to hold that Meadows must appeal the state court's determination that it had no jurisdiction to entertain the merits of his claim.

As I have essayed to demonstrate in my dissent in the consolidated case of *Acord v. Hedrick,* the lack of a contemporaneous objection, assuming that it was, in fact, missing, did not exist as an adequate and independent state ground. The failure-to-make-a-contemporaneous-objection theory was not adequate because (1) it was not applied with any consistency and (2) its application, even in a haphazard fashion, only began in 1983, two years after Meadows' trial. *See Meadows v. Holland,* 831

918

F.2d 493, 507 (4th Cir.1987) (Phillips, J., dissenting: "[I]t simply defies rational belief that if a state contemporaneous objection rule with respect to constitutional error had actually been in general operational effect at the time of Adkins' and Meadows' trials in 1977 and 1981, respectively, its existence would not have been formally invoked or at least noted in dictum in any published decisions of the highest state court until *Kopa* was decided in December 1983."). That any rule of waiver must be "strictly or regularly followed," *Hathorn v. Lovorn*, 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982), *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988), and that such evenhandedness is lacking in West Virginia even to the present time is tellingly demonstrated in the *Acord v. Hedrick* portion of this dissent.

### III

The majority's distaste for allowing Acord or Meadows the fair trial to which each is constitutionally entitled has found expression by setting for them impossible tasks. They each must show even more inconsistency than has existed when the law was regularly and consistently announced *in both their favors* until after their trials, followed by developed and repeated inconsistency up to the present day. Meadows must, in addition, sacrifice a substantial period of his life to obtain a result in his favor which is already plainly mandated. And all that ceremonial charade will not free either. If victorious on habeas corpus, they will still each face a trial to determine guilt or innocence. All West Virginia in either case is entitled to is a fair trial. The State presumably feels it can win but we are not yet at the stage that Lewis Carroll's Queen of Hearts advocated: "Sentence first—verdict afterwards."

Accordingly, I respectfully dissent in *Meadows v. Legursky* and in *Acord v. Hedrick*. Chief Judge Ervin as to *Meadows* and Judge Phillips as to both *Meadows* and *Acord* join in this dissent.