Frank R. NICKERSON, Petitioner–
Appellant,

v.

T.A. LEE; Attorney General of North
Carolina, Respondents–Appellees.

No. 91–7574.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1992.

Decided July 23, 1992.

As Amended Aug. 12, 1992.

Caryn Cherlin, Student Atty., Appellate Advocacy Clinic, Washington College of Law, The American University, Washington, D.C. (Jennifer Lyman, on the brief), for petitioner-appellant.

Richard Norwood League, Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C. (Lacy H. Thornburg, Atty. Gen., Clarence J. DelForge, III, Asst. Atty. Gen., on the brief), for respondents-appellees.

Before HALL and LUTTIG, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Appellant Frank R. Nickerson, a state prisoner, appeals from a decision of the United States District Court for the Middle District of North Carolina denying his petition for a writ of habeas corpus. We affirm.

### I.

On March 30, 1985, Frank Nickerson shot and killed Willie E. Mitchell after finding Mitchell in bed with Nickerson's ex-wife. On October 25, 1985, Nickerson was convicted of first-degree murder in the Person County, North Carolina, Superior Court, and sentenced to life imprisonment. On the same day, Nickerson filed a motion for appropriate relief, alleging in concluso-

ry terms that the trial court had made legal errors, that there was insufficient evidence to submit the case to the jury, that the verdict was contrary to the weight of the evidence, and that the trial was not fair and impartial. *See* N.C.Gen.Stat. § 15A–1414. This motion apparently was never acted upon. On June 27, 1986, Nickerson filed a second motion for appropriate relief in the Person County Superior Court, alleging that newly discovered evidence entitled him to an evidentiary hearing. *See id.* § 15A–1415(b)(6). This motion was denied on July 15, 1986. Nickerson's conviction and the denial of his second motion for appropriate relief were both affirmed by the North Carolina Supreme Court on September 3, 1987. *State v. Nickerson,* 320 N.C. 603, 359 S.E.2d 760 (1987).

On September 8, 1989, Nickerson filed *pro se* a third motion for appropriate relief in the Person County Superior Court. In this motion, Nickerson, a black man, alleged racial discrimination in the selection of the foreman of the grand jury that indicted him; racial discrimination in the selection of the petit jurors who convicted him; ineffective assistance of counsel at trial and on direct appeal; error by the trial court in failing to give a self-defense instruction; and error by the trial court in admitting the testimony of a witness whose identity had not been disclosed to Nickerson prior to trial. *See* N.C.Gen.Stat. § 15A–1415(b)(3). None of these claims had been advanced on direct appeal or in Nickerson's second motion for appropriate relief. On January 3, 1990, the court denied the motion without a hearing and, on May 10, 1990, the North Carolina Supreme Court denied Nickerson's petition for a writ of certiorari, *State v. Nickerson,* 393 S.E.2d 886 (N.C.1990).

Having exhausted his state court remedies, *see* 28 U.S.C. § 2254(b), Nickerson filed a petition for a writ of habeas corpus in federal district court on June 11, 1990. *See id.* § 2254(a). Nickerson raised the same claims in the federal habeas action that he had raised in his third motion for appropriate relief in state court. On the recommendation of a magistrate, *see id.* § 636(b)(1)(B), the district court denied the petition and dismissed the case without a hearing. On November 7, 1991, we granted a certificate of probable cause to appeal, *see id.* § 2253, granted Nickerson leave to proceed *in forma pauperis,* and appointed counsel. We heard oral argument on May 6, 1992.[1]

## II.

■ The threshold question for consideration is whether Nickerson's federal claims are procedurally barred. A federal court may not address the merits of a habeas petition when the state court's denial of a petition for collateral relief rested on the independent and adequate state law ground of procedural default. As on direct appeal, *see Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), there is a presumption in habeas that a state court's dismissal of a petition for collateral relief does not rest on an independent and adequate state ground and that the state court has rejected the petitioner's federal claims on the merits. The presumption in favor of federal review, however, applies "only when it fairly appears that [the] state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991).

In *Coleman,* the petitioner sought a writ of habeas corpus in a Virginia circuit court. After the petition was denied, an appeal petition was filed in the Virginia Supreme Court. The Commonwealth filed a motion to dismiss the appeal, on the sole ground that the notice of appeal was untimely. The Virginia Supreme Court did not immediately act upon the motion to dismiss, and the parties filed briefs addressing the merits of the petitioner's claims. A few

---

1. On appeal, Nickerson has abandoned his claim that the trial court erred in admitting the testimony of a witness whose identity had not been disclosed prior to trial.

months later, the Virginia Supreme Court issued an order dismissing the appeal, which concluded by stating that "the motion to dismiss is granted and the petition for appeal is dismissed." *Id.* 111 S.Ct. at 2553. The United States Supreme Court held that this order "fairly appear[ed]" to rest on state law, since it "stated plainly" that the court was granting the Commonwealth's motion to dismiss for untimely filing of the appeal notice. *Id.* 111 S.Ct. at 2559.

■ The appellees in this case contend that the state court order denying Nickerson's third motion for appropriate relief satisfied the independent and adequate state ground standard announced in *Coleman.*[2] That order, which was issued by the Person County Superior Court, reads as follows:

> This cause coming on to be heard before the undersigned Judge presiding in the Person County Courthouse on January 3, 1990, pursuant to the petitioner's Motion for Appropriate Relief which was filed in the office of the Person County Clerk of Superior Court on September 8, 1989, the Court upon review of the motion and the file in the case finds that the petitioner has set forth no grounds for which he is entitled to a motion for appropriate relief.
>
> The Court further finds that the petitioner has previously had a motion for appropriate relief denied on July 15, 1986 by the Honorable Henry W. Hight, Jr., and that the petitioner has taken his case on appeal to the North Carolina Supreme Court. The North Carolina Supreme Court found "no error" in the petitioner's trial.
>
> WHEREFORE, IT IS ORDERED BY THE COURT that the petitioner's Motion for Appropriate Relief is denied and dismissed.

J.A. at 265.[3] The appellees argue that the order's second paragraph "pretty clearly invokes procedural default as it has relevance only in the context of invoking North Carolina's statutory waiver rule." Appellees' Br. at 24. The statutory provision to which the appellees refer provides that a motion for appropriate relief may be denied under three circumstances, two of which are relevant to this case: where "[u]pon a previous motion [for appropriate relief] . . . , the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so," N.C.Gen.Stat. § 15A–1419(a)(1), and where "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so," *id.* § 15A–1419(a)(3).

Because none of the five claims that Nickerson raised in his third motion for appropriate relief was raised in his direct appeal or in his second motion for appropriate relief, it appears that the motion could have been denied on the ground of procedural default. We do not believe, however, that it was denied on this alternative ground. *Cf. Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985) ("The mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."). At a minimum, there is "good reason to question whether there is an independent and adequate state ground for the decision." *Coleman,* 111 S.Ct. at 2559.

The first paragraph of the order states the court's conclusion, after having reviewed Nickerson's motion and the file in the case, that Nickerson "has set forth no grounds for which he is entitled to . . .

---

2. The appellees did not present this argument in the district court. A procedural default defense not raised below, however, is not waived as long as the state court's dismissal order was before the district court, as it was here. *See Meadows v. Legursky,* 904 F.2d 903, 907 (4th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990).

3. The order of the North Carolina Supreme Court denying Nickerson's petition for a writ of certiorari stated merely that the petition was "[d]enied by order of the Court in conference, this the 10th day of May 1990." *State v. Nickerson,* 393 S.E.2d 886, 887 (N.C.1990).

relief." J.A. at 265. This paragraph implies that the court reached and reviewed the merits of each of Nickerson's claims and concluded that he would not be entitled to relief on any of these claims. Thus, the only question is whether the second paragraph recites an alternative ground for the court's decision. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989) ("[T]he adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

The appellees' argument as to the meaning of the second paragraph is not without appeal. Ultimately, however, we cannot conclude from this paragraph that the court's judgment rested on the independent and adequate state ground of procedural default. At bottom, the second paragraph is nothing more than a recitation of the procedural history of Nickerson's case. The court neither mentions procedural default (or any synonymous term) nor cites any relevant North Carolina statutory or decisional law. It does not even note that the claims raised by Nickerson in the underlying motion had not been raised in his previous direct and collateral appeals.

The appellees contend that the paragraph "has relevance *only* in the context of invoking North Carolina's statutory waiver rule." Appellees' Br. at 24 (emphasis added). Were this true, we would be inclined to accept the appellees' claim that the state court's judgment does rest on the independent and adequate state ground of procedural default. There are, however, any number of reasons for a court to recite the procedural history of a case in an opinion or an order. The court may have been noting the dispositions of other tribunals merely to lend additional support to its conclusion that Nickerson had received a fair trial. *Cf. Coleman v. Thompson,* —— U.S. ——, 112 S.Ct. 1845, 1845, 119 L.Ed.2d 1 (1992) (*per curiam* ) (observing in order denying stay application that "this is now the twelfth round of judicial review"). Indeed, from its focus on the fact that the North Carolina Supreme Court had found no error in Nickerson's trial, it appears that this may well have been the purpose for including the second paragraph.[4]

This is not a case like *Coleman,* in which the meaning of the order can be determined from the pleadings. In *Coleman,* the Commonwealth had filed a motion to dismiss on the grounds of procedural default. Therefore, when the court granted Virginia's motion to dismiss, it was apparent that the court's judgment rested upon independent and adequate state grounds. Here, it appears that North Carolina did not respond to Nickerson's motion at all. Thus, unlike in *Coleman,* there is no basis for concluding from the order, read in combination with the pleadings, that the state court's judgment rested even in part on state law. *See Ylst v. Nunnemaker,* —— U.S. ——, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991) ("In *Coleman* itself, although the order was unexplained, the nature of the disposition ('dismissed' rather than 'denied') and surrounding circumstances (in particular the fact that the state had rested its argument entirely upon a procedural bar), indicated that the basis was procedural default."); *Hunter v. Aispuro,* 958 F.2d 955, 958 (9th Cir.1992) ("Reading a pro forma state court decision as relying on state procedural grounds when those grounds are argued to the state court and are dispositive is consistent with established practice.").[5]

---

4. The appellees suggest that the court's use of the verb "finds" confirms that the court was not simply recounting the procedural history of the case but was specifically reciting factual findings that Nickerson could have, but did not, raise his claims in prior appeals. We agree with appellees that it is somewhat odd that the court would begin a recitation of procedural history with the verb "finds," rather than with "notes" or "observes," for example. We are unprepared

in the context of this particular order, however, to conclude from use of this word alone (or from use of this word together with its adverbial modifier "further") that the court intended to convey that procedural default was an alternative ground for its denial of Nickerson's motion.

5. This is also not a case like *Byrd v. Delo,* 942 F.2d 1226 (8th Cir.1991), where the Eighth Circuit held that the fact that a petition was rejected on the same day it was filed indicated that

We conclude that the Person County Superior Court's judgment did not rest upon an independent and adequate state ground and, accordingly, that it is appropriate for this court to reach the merits of Nickerson's federal constitutional claims.

### III.

Nickerson's first claim is that the foreman of the grand jury that indicted him was selected in a racially discriminatory manner, in violation of the Equal Protection Clause of the Fourteenth Amendment. In support of this claim, Nickerson proffered a press release from the administrative office of the North Carolina courts discussing a study that detailed the infrequency with which blacks had, until recently, been selected as grand jury foremen, and a newspaper article about the study. According to the newspaper article, "more than half the state's 100 counties ha[d] not chosen a black grand jury foreman in modern times." J.A. at 95. Person, the county in which Nickerson was indicted, however, was not among the counties in which there had not been black grand jury foremen; the article recited that Person had had black foremen between 1982 and 1987. Nickerson was indicted in 1985.

The district court rejected Nickerson's claim on the authority of *Hobby v. United States*, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984), concluding that even if his allegations were true, racial discrimination in the selection of the grand jury foreman in North Carolina does not rise to the level of a constitutional violation. The court determined that this case is more analogous to *Hobby* than to *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979).

The petitioners in *Rose* alleged that discrimination in the selection of a Tennessee grand jury foreman violated their equal protection rights. The Supreme Court "assume[d] without deciding that discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination ... had tainted the selection of the entire grand jury venire," *id.* at 551–52 n. 4, 99 S.Ct. at 2998, but held that the petitioners had failed to make out a *prima facie* case of discrimination. In *Hobby*, the Court held that discrimination in the selection of federal grand jury foremen does not violate a defendant's due process rights [6] and, in so holding, distinguished *Rose*.[7]

---

the basis of the unexplained order "was not an examination of the merits of the petition, which surely would have taken more time, but rather the application of a procedural rule." *Id.* at 1232. In this case, the Person County Superior Court denied Nickerson's motion for appropriate relief four months after it was filed.

**6.** It is not entirely clear whether *Hobby* held that discrimination in the selection of federal grand jury foremen does not violate the Due Process Clause or only that such discrimination does not require that the defendant's conviction be reversed. *Compare, e.g.,* 468 U.S. at 344, 104 S.Ct. at 3096 ("Discrimination in the selection of [federal] grand jury foremen—as distinguished from discrimination in the selection of the grand jury itself—does not in any sense threaten the interests of the defendant protected by the Due Process Clause.") *and id.* at 345, 104 S.Ct. at 3096 (discrimination in selection of federal grand jury foremen "can have little, if indeed any, appreciable effect upon the defendant's due process right to fundamental fairness") *with id.* at 342, 104 S.Ct. at 3095 ("It is well settled ... that purposeful discrimination ... in the selection of federal grand jury foremen is forbidden by the Fifth Amendment to the Constitution. The question presented here ... is the narrow one of the appropriate remedy for such a viola-

tion.") *and id.* at 350, 104 S.Ct. at 3099 ("We hold that ... discrimination ... [in] the selection of federal grand jury foremen ... does not warrant the reversal of [a] conviction....").

**7.** *Hobby* distinguished *Rose* on three different grounds. First, and foremost, the Court observed that "the nature of [Hobby's] alleged injury and the constitutional basis of his claim" were different from the alleged injury and constitutional claim in *Rose.* 468 U.S. at 347, 104 S.Ct. at 3097. The claim in *Rose* was an equal protection claim brought by black petitioners, who were "members of the class allegedly excluded from service as grand jury foremen," *id.,* while the claim in *Hobby* was a due process claim brought by a white male. The Court stated that while the Equal Protection Clause "has long been held to provide a mechanism" for remedying "the injuries of stigmatization and prejudice associated with racial discrimination," discrimination in the selection of federal grand jury foremen does not have "a significant impact upon the due process interests of criminal defendants." *Id.*

Second, the Court noted that the grand jury foreman in Tennessee, whose selection was at issue in *Rose,* is separately appointed by the

The district court reasoned that because the North Carolina grand jury foreman, like his federal counterpart, is selected from among the grand jurors after they have been empaneled, and because the functions of the North Carolina foreman are more like the functions of a federal grand jury foreman than like those of a Tennessee grand jury foreman, *Hobby*, rather than *Rose*, governed disposition of Nickerson's equal protection claim. *See supra* note 7.[8] The district court did not address the threshold question of whether a holding that discrimination in the selection of North Carolina grand jury foremen violates the Equal Protection Clause would be a new rule under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[9]

We agree with the district court that the North Carolina grand jury foremen are more akin to the federal foremen than to the Tennessee foremen insofar as their selection and responsibilities are concerned. *Compare* N.C.Gen.Stat. § 15A–622 to –628 *with* Fed.R.Crim.P. 6(c). But we are not as convinced as the district court that this case is properly analyzed under the *authority* of *Hobby*, rather than under the equal protection principles discussed in detail in *Rose*, *see* 443 U.S. at 551–59, 99 S.Ct. at 2997–3002 and to a lesser extent in *Hobby*, *see* 468 U.S. at 347, 104 S.Ct. at 3097, especially given that the Court in *Hobby* addressed a due process, not an equal protection, claim.[10] We conclude, however, that a rule prohibiting discrimination in the selection of grand jury foremen in North Carolina would constitute a new rule within the meaning of *Teague*, and therefore that Nickerson's equal protection claim is not cognizable in federal habeas corpus.

■ A new rule of law will not be applied retroactively to cases on collateral review—that is, to convictions that have become final before the new rule is announced. *Teague*, 489 U.S. at 299–316, 109 S.Ct. at 1068–1078 (plurality op.).[11] One of the purposes of this "new rule" rule is to vindicate principles of "finality, predictability, and comity." *Stringer*, —— U.S. at

court, while in the federal system the foreman is selected from among the members of the grand jury after they have been empaneled. *Id.* at 347–48, 104 S.Ct. at 3098. The foreman selection process at issue in *Rose*, therefore, "determined not only who would serve as presiding officer, but also who would serve as the 13th voting member of the grand jury." *Id.* at 348, 104 S.Ct. at 3098.

Third, the Court pointed out that in Tennessee the grand jury foreman has investigative and administrative powers and responsibilities, while in the federal system the foreman performs only ministerial tasks. *Id.*

8. Two months before it affirmed Nickerson's conviction, the North Carolina Supreme Court decided *State v. Cofield*, 320 N.C. 297, 357 S.E.2d 622 (1987). In *Cofield*, the court held that discrimination in the selection of North Carolina grand jury foremen violates the equal protection provisions of the North Carolina constitution. Citing *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the court stated that those provisions "constitute adequate and independent state grounds for our decision in this case." 357 S.E.2d at 625. Although it was not necessary to reach the question, the court went on to say, in *dictum*, that it was persuaded that the defendant's claim "has merit under the fourteenth amendment to the United States Constitution" as well. *Id.* at 627. In reaching this conclusion, the North Carolina

Supreme Court relied on *Rose*, and distinguished *Hobby*, on the basis that *Hobby* was decided on due process rather than equal protection grounds. *Id.* at 627–28.

9. We specifically requested that the parties brief this issue.

10. The district court seemed to believe, although it said otherwise, that the Supreme Court stated in *Hobby* that its assumption in *Rose*—that discrimination in the selection of grand jury foremen violates the Equal Protection Clause—was based exclusively upon the fact that the Tennessee foreman is not chosen from the grand jury panel and that he performs substantive functions. *See* J.A. at 25. We do not believe either that *Hobby* so stated, *see* 468 U.S. at 349, 104 S.Ct. at 3098, or that the selection method and functions of the Tennessee foreman were the only, if even the primary, factors that underlay the Court's assumption in *Rose*. *See infra* pp. 1132–34.

11. *See also Stringer v. Black*, —— U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992); *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990); *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

——, 112 S.Ct. at 1135.[12] The Court acknowledged in *Teague* that "[i]t is . . . difficult to determine when a case announces a new rule," 489 U.S. at 301, 109 S.Ct. at 1070, but *Teague* and the cases following it provide considerable guidance on the inquiry. A case announces a new rule when it "breaks new ground," when it "imposes a new obligation on the States or the Federal Government," or when the rule "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* A rule is new when it is "susceptible to debate among reasonable minds," *Butler*, 494 U.S. at 415, 110 S.Ct. at 1217, or is one "over which reasonable jurists may disagree," *Sawyer*, 497 U.S. at ——, 110 S.Ct. at 2827.

Nickerson argues that the holding—or at least the reasoning—of *Rose* dictates that discrimination in the selection of North Carolina grand jury foremen violates the Equal Protection Clause, and that this rule of law would therefore not be new within the meaning of *Teague*.[13] He contends in this regard that *Rose* was necessarily unaffected by *Hobby*, because *Hobby* addressed only a due process, not an equal protection, claim. Nickerson also argues that *Cofield*'s approving citation of *Rose* demonstrates that the North Carolina courts felt compelled to follow *Rose* at the time Nick-

erson's conviction became final.[14] Neither of these arguments is persuasive.

First, the Court in Rose merely assumed without deciding that discrimination in the selection of Tennessee grand jury foremen violates the Equal Protection Clause. 443 U.S. at 551–52 n. 4, 99 S.Ct. at 2998 n. 4; *see also Hobby*, 468 U.S. at 346–47, 104 S.Ct. at 3097 (noting that *Rose* did not decide equal protection question).[15] Thus, *Rose* cannot dictate the rule that Nickerson urges upon the court. *See Nichols v. Butler*, 953 F.2d 1550, 1555 (11th Cir.1992) (*en banc*) (Edmondson, J., dissenting) ("[D]icta . . . cannot 'dictate' a result in later cases unless we intend to disregard the important distinction between a holding and dicta or unless we intend to redefine the word 'dictate.' ").

Second, although the reasoning in Rose that appears throughout its discussion of discriminatory selection of grand jurors, see 443 U.S. at 551–59, 99 S.Ct. at 2997–3002, would undoubtedly inform resolution of the claim that discrimination in the selection of North Carolina grand jury foremen violates the Equal Protection Clause,[16] that reasoning could not fairly be regarded as dictating, at the time his conviction became final, the rule for which Nickerson argues. *See Saffle*, 494 U.S. at 491, 110 S.Ct. at 1261 (even if earlier decisions "inform, or

---

**12.** The *Teague* retroactivity rule applies to those cases in which the petitioner seeks the benefit of a rule of federal law announced after his conviction became final, *see, e.g., Sawyer*, 497 U.S. 227, 110 S.Ct. 2822, and to those in which a petitioner requests a federal court to *adopt* a rule from which he will benefit, *see, e.g., Teague*, 489 U.S. 288, 109 S.Ct. 1060. This case is of the latter type.

**13.** This court has four times held, in unpublished decisions, that a rule barring discrimination in the selection of North Carolina grand jury foremen would be a new one under *Teague*. *See Peele v. Barnett*, 935 F.2d 1287 (4th Cir.1991) (*per curiam*); *Sellars v. Lee*, 924 F.2d 1053 (4th Cir.1991) (*per curiam*); *Wharton v. Barnett*, 920 F.2d 927 (4th Cir.1990) (*per curiam*); *Matthews v. Barnett*, 918 F.2d 955 (4th Cir.1990) (*per curiam*). In two of those cases, however, the petitioner's conviction had become final prior to the date on which *Rose* was decided, and in two of the cases it is not apparent when the petitioner's conviction became final.

**14.** Nickerson does not advance the alternative claim that either or both of the exceptions to the "new rule" rule are applicable in this case. Nor would we accept such a claim. The rule for which Nickerson argues neither "places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe'" nor "requires the observance of 'those procedures that . . . are "implicit in the concept of ordered liberty." ' " *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 692–93, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in the judgment in part and dissenting in part), in turn quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).

**15.** *Cofield* also acknowledged that the "rule" of *Rose* is *dictum*. *See* 357 S.E.2d at 627.

**16.** The reasons underlying the Court's assumption that discrimination in the selection of grand jury *foremen* violates the Equal Protection Clause were not discussed.

even control or govern, the analysis of [the petitioner's] claim, it does not follow that they compel the rule that [he] seeks"). This is especially so given that *Hobby* distinguished *Rose* not only on the ground that *Rose* was an equal protection case, but also on the grounds that the selection method and functions of the Tennessee grand jury foreman were different from those of the federal grand jury foreman. Distinguishing *Rose* on these latter grounds introduced substantial uncertainty into the analysis of whether discrimination in the selection of North Carolina grand jury foremen would offend the Equal Protection Clause. In fact, prior to the date on which Nickerson's conviction became final, at least one court held on the authority of *Hobby*, and another court clearly presumed based on that case, that discrimination in the selection of a state grand jury foreman does not violate the Equal Protection Clause where the state foreman is selected in the manner of a federal grand jury foreman and performs functions similar to those of the federal foreman. *See Ingram v. State*, 253 Ga. 622, 323 S.E.2d 801, 808 (1984) ("As in the federal system, Georgia forepersons are selected from the membership of each grand jury and serve only with that grand jury. As in the federal system, a foreperson's duties are essentially ministerial. Thus, the assumptions of *Rose v. Mitchell* are inapplicable to the Cobb County foreperson selection system."), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985);[17] *State v. Ramseur*, 106 N.J. 123, 524 A.2d 188, 245 (1987) ("The question here is whether the grand jury foreperson in this state performs duties that are so significant that the equal protection clause may be said to be violated.... [T]he duties of the grand jury foreperson in this state are closer to those of federal forepersons than to those of Tennessee forepersons, and hence are not constitutionally significant.").[18]

Third, *Cofield*, which was decided two months before Nickerson's conviction became final, cannot be dispositive of the issue of whether Nickerson's proposed rule should be considered new, because the rule announced in that case was a rule of *state* constitutional law. Whether a conviction was obtained in violation of state law, of course, has no direct relevance on the question of whether the federal Constitution was violated by the same conduct.

*Cofield* did include a section in which it concluded that the relevant distinction between *Rose* and *Hobby* is that the petitioner in the former case raised an equal protection claim while the petitioner in the latter case raised a due process claim, and that Cofield's discrimination claim "ha[d] merit under the fourteenth amendment," 357 S.E.2d at 627. These conclusions, however, were admittedly *dicta. See id.* ("[O]ur decision in this case can stand on the North Carolina Constitution alone, and we need not reach the federal question presented."). And in any event, this understanding of the dispositive distinction between *Rose* and *Hobby* is not, as we have noted, the only reasonable understanding of these two cases. *See Ingram*, 323 S.E.2d at 808; *Ramseur*, 524 A.2d at 245.[19]

---

**17.** The defendant in *Ingram* did not specifically raise an equal protection claim, but the Georgia Supreme Court left little question that an equal protection claim would stand on no better footing than a due process claim where the selection method and functions of the state grand jury foreman were similar to those of the federal grand jury foreman. *See* 323 S.E.2d at 808 n. 4.

**18.** Nickerson relies in part on *Guice v. Fortenberry*, 661 F.2d 496 (Former 5th Cir.1981) (*en banc*), a decision that expressly held that discrimination in the selection of a grand jury foreman violates the Equal Protection Clause. *Guice*, however, predated *Hobby*. Its value in determining whether the rule for which Nickerson argues was dictated at the time his conviction became final is therefore limited.

**19.** Nor do we think that *Felton v. Barnett*, 912 F.2d 92 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 693, 112 L.Ed.2d 683 (1991), supports Nickerson's claim. In *Felton*, as here, we addressed a claim that discrimination in the selection of North Carolina grand jury foremen was unconstitutional. The issue there, however, was whether such a claim was sufficiently novel to excuse the petitioner's failure to raise the claim at trial in 1972 and on direct appeal in 1973 and thereby satisfy the "cause" requirement of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We held that the claim was not sufficiently novel in the early 1970s to excuse procedural default. That a legal rule is not sufficiently novel to excuse procedural default, however, does not mean that it is not

We therefore conclude that Nickerson's proposed rule is "susceptible to debate among reasonable minds," *Butler*, 494 U.S. at 415, 110 S.Ct. at 1217, and "was not dictated by precedent existing at the time [his] conviction became final," *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis omitted). Accordingly, we hold that a rule barring discrimination in the selection of North Carolina grand jury foremen as violative of the Equal Protection Clause would be a new rule of law, and that Nickerson's equal protection claim is therefore not cognizable in federal habeas corpus.[20]

## IV.

■ Nickerson next claims that under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), he has made out a *prima facie* case of discrimination in the selection of the jury that convicted him or, alternatively, that he is entitled to an evidentiary hearing on his *Batson* claim in the district court. In support of this claim, Nickerson alleges that the state exercised "the bulk" of its peremptory challenges against black veniremen, J.A. at 71, and that at least two of the jurors struck by the state "made no statements revealing knowledge or bias that would give a prosecutor reasons preferring [sic] their removal," Appellant's Br. at 17. Nickerson concedes that there were blacks on the jury that convicted him.[21]

The district court rejected Nickerson's *Batson* claim without holding a hearing. The court concluded that Nickerson had alleged nothing more than that the prosecutor used peremptory challenges to strike black veniremen, and therefore that he could not make out a *prima facie* case of discrimination. We agree.

*Batson* does not offer much guidance as to how a defendant may establish a *prima facie* case of an equal protection violation. Beyond requiring a showing that the prosecutor has exercised peremptory challenges to remove black veniremen, the opinion merely refers to "relevant circumstances" and a "combination of factors" that might give rise to an inference of purposeful discrimination, 476 U.S. at 96, 106 S.Ct. at 1723, and gives two examples of prosecutorial conduct that might support a *prima facie* case: a pattern of strikes against black veniremen, and statements and questions during *voir dire* that suggest a discriminatory purpose, *id.* at 97, 106 S.Ct. at 1723. Though we have observed that there is no *per se* rule for establishing a *prima facie* case, see *United States v. Grandison*, 885 F.2d 143, 147 (4th Cir.1989), *cert. denied*, 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990); *United States v. Lane*, 866 F.2d 103, 107 (4th Cir.1989), we have held that a showing that a black venireman has been struck, standing alone, is insufficient, *see Grandison*, 885 F.2d at 149; *Lane*, 866 F.2d at 105.

Nickerson has not shown that there was a pattern of strikes against black veniremen, or that the prosecutor asked questions or made comments during *voir dire* that suggest a discriminatory purpose. In fact, there is nothing in this record, apart

new for purposes of retroactivity, because the novelty standard is more easily met in the retroactivity than in the procedural default context. A rule of law is sufficiently novel to constitute "cause" only if a lawyer had no "reasonable basis" for relying upon it at trial or on direct appeal, *Reed v. Ross*, 468 U.S. 1, 14, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984).

**20.** Because we conclude that Nickerson's proposed rule would be new, we express no view on the constitutional merits of that rule. We do note, however, that Nickerson has not alleged—much less shown—that the foreman of the grand jury that indicted him was not black, as his counsel conceded at oral argument, and that according to Nickerson's own evidence, there were black grand jury foremen in Person County in the period during which he was indicted. Given these facts, it is doubtful that Nickerson could establish a *prima facie* case, even if discrimination in the selection of North Carolina grand jury foremen is unconstitutional. *See Rose*, 443 U.S. at 565, 99 S.Ct. at 3005 (describing elements of *prima facie* case). *Compare Castaneda v. Partida*, 430 U.S. 482, 495–97, 97 S.Ct. 1272, 1280–81, 51 L.Ed.2d 498 (1977) (*prima facie* case established) with *Rose*, 443 U.S. at 565–74, 99 S.Ct. at 3005–3010 (no *prima facie* case established).

**21.** The jury strike sheets reflect that the state used ten out of the sixteen peremptory challenges to which it was entitled under N.C.Gen. Stat. § 15A–1217. *See* J.A. at 114–15.

from Nickerson's unsupported allegation that the "bulk" of the prosecutor's peremptory challenges were used to strike black veniremen, even indicating the number of black veniremen struck by the prosecutor. Because a bare allegation that the prosecutor exercised peremptory challenges against black veniremen is insufficient to establish a *prima facie* case of discrimination, we reject Nickerson's *Batson* claim.[22]

## V.

■ Nickerson claims that his attorney rendered ineffective assistance by failing at trial and on direct appeal either to investigate or to advance claims of discrimination in the selection of the grand jury foreman and in the selection of the petit jury.[23] As with Nickerson's *Batson* claim, the district court rejected this claim without holding a hearing. With respect to the grand jury issue, the district court reasoned that because any discrimination in the selection of a grand jury foreman does not have constitutional significance, *see supra* part III, Nickerson could not satisfy the prejudice requirement of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[24] With respect to the petit jury issue, the district court concluded that Nickerson could not satisfy the prejudice requirement of *Strickland,* because he could not establish even a *prima facie* case of a *Batson* violation. The district court also concluded with respect to this issue that Nickerson could not satisfy the defi-

ciency requirement of *Strickland,* because Nickerson's attorney could not have been expected to object to the State's peremptory challenges, since Nickerson's trial predated *Batson* by six months.

On appeal, Nickerson claims that he is entitled to a hearing on his ineffective assistance claim.[25] With respect to his grand jury claim, Nickerson argues that it is not *Hobby* but *Rose* that states the correct rule of law, and that he therefore would have had a constitutional claim had his attorney pursued it. Nickerson also argues that his counsel should have raised a state law discrimination claim pursuant to *Cofield,* which was decided two months before his conviction became final. With respect to his petit jury claim, Nickerson argues that his Batson claim might not have failed had his attorney created a record, and that his attorney could have raised a *Batson* claim on direct appeal, because *Batson* was decided before his conviction became final.

We find no error in the district court's rejection of Nickerson's ineffective assistance claim. Nickerson has produced no evidence that would have supported a good faith objection by counsel to the selection of the foreman of the grand jury that indicted Nickerson or to the selection of the petit jury that convicted him. There is no *evidence* in the record that any—much less "the bulk"—of the veniremen struck by the prosecution were black. Nor is there any evidence that the prosecutor asked ques-

---

**22.** Nickerson's conclusory allegations do not entitle him to an evidentiary hearing for the purpose of supplementing the record. *See Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir.), *cert. denied,* 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989); *Mayberry v. Petsock,* 821 F.2d 179, 185–86 (3d Cir.), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987); *see also infra* part V.

**23.** In particular, Nickerson alleges that his attorney "failed to examine and compare jury lists, object to opposing counsel's peremptory strikes during voir dire, object to the composition of the petit jury, object to the grand jury foreman, and raise these discrimination issues on appeal." Reply Br. at 9.

**24.** Under *Strickland,* a defendant must show both that his attorney's performance was deficient and that it prejudiced the defense. 466 U.S. at 687, 104 S.Ct. at 2064. To show deficien-

cy, the defendant must demonstrate that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2065. To show prejudice, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

**25.** Nickerson's primary purpose for advancing his ineffective assistance claim in his opening brief is to show cause and prejudice in the event that this court determines that his claims are procedurally barred. *See supra* part II. The fairest reading of his briefs, however, is that he is raising ineffective assistance not only as a means of excusing procedural default, but also as a substantive claim entitling him to habeas relief.

tions or made comments during *voir dire* that might suggest racial bias. Nickerson similarly has presented no evidence that there was discrimination in the selection of grand jury foremen in Person County. He concedes that he does not even know the race of the foreman of the grand jury that indicted him, and the only evidence relating to discrimination that was proffered by Nickerson—the report of the administrative office of the North Carolina courts—reflects that black grand jury foremen did serve in Person County in the period during which Nickerson was indicted.

█ We recognize that Nickerson's ineffective assistance claim rests in part on an argument that his attorney failed to investigate whether he would have valid claims of discrimination in the selection of the petit jury and grand jury foreman. It is simply not enough, however, for a petitioner to allege that there *might* have been discrimination in some aspect of his trial. In order to obtain an evidentiary hearing on an ineffective assistance claim—or, for that matter, on any claim—a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing. *See Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3d Cir.) ("bald assertions and conclusory allegations do not provide sufficient ground ... to require an evidentiary hearing"; contrary rule would "encourage meritless petitions burdening judicial resources"), *cert. denied,* — U.S. —, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991); *see also United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1138–39 (7th Cir. 1990); *Lavernia v. Lynaugh,* 845 F.2d 493, 501 (5th Cir.1988); *Spillers v. Lockhart,* 802 F.2d 1007, 1009 (8th Cir.1986). Here, Nickerson has come forward only with the barest of allegations, all of which are unsupported. He has not produced any evidence that there was discrimination in the selection of either his grand jury foreman or his petit jury. Nor is there any evidence in the record (or even any nonrecord evidence) that supports his claim that additional investigation by his counsel would have enabled him to make out such claims.

Even if Nickerson had produced some evidence of discrimination, and could therefore satisfy the prejudice requirement of *Strickland,* it is doubtful that he could satisfy the deficiency requirement. Nickerson was tried in October 1985, and his conviction became final in September 1987. *Batson* was decided in April 1986. Failure to anticipate a new rule of law ordinarily does not render an attorney's assistance ineffective, *see Honeycutt v. Mahoney,* 698 F.2d 213, 217 (4th Cir.1983), so Nickerson's counsel cannot be faulted for any failure to object to the prosecutor's peremptory challenges during *voir dire.* Whether Nickerson's attorney's failure to raise the *Batson* claim in his direct appeal constituted deficient performance is a closer question, but that claim is problematic as well. *See Randolph v. Delo,* 952 F.2d 243, 246–47 (8th Cir.1991) (*per curiam* ) (no deficient performance where counsel failed to raise *Batson* claim when jury returned verdict, which was on day *Batson* was decided; when new trial motion was filed, which was three weeks after *Batson* was decided; and on direct appeal, which was decided eleven months after *Batson* was decided), *cert. denied,* — U.S. —, 112 S.Ct. 1967, 118 L.Ed.2d 568 (1992); *Johnson v. Armontrout,* 923 F.2d 107, 108 n. 3 (8th Cir.) (no deficient performance where counsel failed to raise *Batson* claim on direct appeal, even though conviction was affirmed three months after *Batson* was decided), *cert. denied,* — U.S. —, 112 S.Ct. 106, 116 L.Ed.2d 75 (1991).

If the performance of Nickerson's counsel was not deficient on account of his failure to raise a *Batson* claim, it was *a fortiori* not deficient on account of his failure to raise a claim under *Cofield. Cofield* was decided five months after Nickerson's appellate brief was filed and two months before his conviction became final. It is also significant that the report of the administrative office of the North Carolina courts detailing the history of discrimination in the selection of grand jury foremen was released three weeks *after* Nickerson's conviction became final.

It is unlikely, finally, that it was objectively unreasonable for Nickerson's attorney not to have advanced a claim based upon *Rose*, given that the equal protection question was not resolved in that case and that *Hobby* at least raised questions as to whether Nickerson could prevail on an equal protection challenge to North Carolina's grand jury foreman selection process. *See supra* part III.

Nickerson, in sum, has shown neither prejudice nor deficiency, and his ineffective assistance claim therefore fails.

## VI.

Nickerson's final claim is that the trial court's failure to give the jury a self-defense instruction deprived him of a fair trial.[26] The district court rejected this claim, concluding that the evidence in this case was insufficient to support a self-defense instruction. The only evidence supporting a self-defense instruction, in the district court's view, was Nickerson's testimony that he thought (albeit mistakenly) that the victim might have been reaching for a gun, testimony the court deemed "self-serving." J.A. at 30.

Nickerson advances two arguments. First, he argues that his testimony was not the only evidence supporting the self-defense instruction, because the police found a second gun close to the victim's body.[27] Second, Nickerson argues that whether his testimony was or was not self-serving required a credibility determination, and was therefore a question for the jury.[28] The

appellees argue that there was insufficient evidence to justify a self-defense instruction, and that the trial court's refusal to give the instruction, in any event, did not rise to the level of a constitutional violation. We agree with the appellees that Nickerson was not deprived of his right to due process, even assuming that there was sufficient evidence to support a self-defense instruction.

On collateral review of a state trial court's jury instructions, a federal court "exercises a limited role," *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir.1983), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2355, 80 L.Ed.2d 828 (1984), and "the inquiry is narrow," *Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir.1985), *vacated on other grounds*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986). Ordinarily, "instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues," *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir.1960), and are therefore not reviewable in a federal habeas proceeding. A federal court may grant habeas relief only when the challenged instruction "by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); it is not enough that the instruction was "undesirable, erroneous, or even 'universally condemned,'" *id.* at 146, 94 S.Ct. at 399. Moreover, the *omission* of a required jury instruction, as alleged here, is "less likely to be prejudicial than a misstatement of the

---

**26.** Under North Carolina law, self-defense is established when it is shown (1) that it appeared to the defendant and he believed that it was necessary to kill the victim in order to save himself from death or great bodily harm; (2) that the defendant's belief was reasonable in that the circumstances as they appeared to the defendant would create such a belief in the mind of a person of ordinary firmness; (3) that the defendant was not the aggressor; and (4) that the defendant did not use excessive force. If all four of these elements are proven, the killing is excused completely. If the first two elements are proven, the charge may be reduced to voluntary manslaughter. *State v. Bush*, 307 N.C. 152, 297 S.E.2d 563, 568 (1982). A defendant is entitled to a self-defense instruction if there is any evidence in the record from which

it can be determined that it was necessary or reasonably appeared to be necessary for the defendant to kill in order to protect himself from death or great bodily harm. *Id.* 297 S.E.2d at 569.

**27.** The State presented evidence that Nickerson's ex-wife had removed that gun from her dresser drawer after Nickerson shot Mitchell.

**28.** The only authority that Nickerson cites in support of his jury instruction claim is *Bush v. Stephenson*, 669 F.Supp. 1322 (E.D.N.C.1986), *aff'd*, 826 F.2d 1059 (1987). In that case, however, the court concluded that the habeas petitioner was *not* entitled to a self-defense instruction.

law." *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977).

Even assuming that there was sufficient evidence to warrant a self-defense instruction, and that there was therefore a violation of state law, the trial court's refusal to give the self-defense instruction did not violate Nickerson's due process rights.[29] "Failure to give an appropriate theory-of-defense instruction, without more, is not a violation of the Due Process Clause. Some other circumstances, demonstrating a serious miscarriage of justice, must be present." *Frey v. Leapley,* 931 F.2d 1253, 1255 (8th Cir.1991) (citation omitted); *accord Bush v. Stephenson,* 669 F.Supp. at 1327. There are no such "other circumstances" present in this case.

The jury was properly instructed, as Nickerson concedes, on the elements of first-degree murder, one of which is that the killing was done with premeditation, deliberation, and malice. "Malice," in turn, is defined as killing without just cause, excuse, or justification. *See, e.g., State v. Fleming,* 296 N.C. 559, 251 S.E.2d 430, 432 (1979). It must be presumed, therefore, that the jury, by convicting Nickerson, found that he killed Mitchell without justification. Thus, even if the trial court erred in refusing to give a self-defense instruction, that error did not result in a miscarriage of justice. *Cf. Kibbe,* 431 U.S. at 156, 97 S.Ct. at 1737 (though trial court did not instruct jury as to foreseeability in second-degree murder case, "the jury's determination that the [defendant] acted recklessly necessarily included a determination that the ultimate harm was foreseeable to him"). "Even if we were to make the

unlikely assumption that the jury might have reached a different verdict pursuant to [the requested] instruction, that possibility is too speculative to justify the conclusion that constitutional error was committed." *Id.* at 157, 97 S.Ct. at 1738.

## CONCLUSION

For the reasons set forth, the judgment of the district court is affirmed.

AFFIRMED.

---

29. It is doubtful that there was a violation of state law. In *State v. Bush,* where the North Carolina Supreme Court held that there was insufficient evidence to warrant a self-defense instruction, the evidence was, if anything, even more substantial than the evidence in this case. In that case, there was evidence that the victim had pushed the defendant and told him to get out of his home, 297 S.E.2d at 568; in this case, there was no evidence of physical or verbal threats. The court in *Bush* also concluded that "the defendant's self-serving statements that he was 'nervous' and 'afraid' and that he thought he

was 'protecting myself'" were an inadequate basis for a self-defense instruction, *id.;* similar testimony allegedly serves as a basis for a self-defense instruction in this case. The Fourth Circuit has also held, in a case in which the evidence was at least as substantial as the evidence in this case, that there was insufficient evidence under North Carolina law to support a self-defense instruction. *See Honeycutt v. Mahoney,* 698 F.2d 213, 216 (4th Cir.1983) (victim came after defendant with knife); *see also Bush v. Stephenson,* 669 F.Supp. at 1327.