KING, Circuit Judge,
dissenting in part:
It has been said that “The right to be heard does not ... include the right to be taken seriously.”[1] In a very real sense, the opposite is true in death penalty cases. A defendant must not only be allowed opportunities to be heard — on direct appeal, in a motion for appropriate relief, and in a federal habeas corpus petition, but claims made in the course of those proceedings must be given the serious consideration they are due.
In this case, there is no doubt that Robert Bacon has been afforded proceedings in which to allege errors in his trial and sentencing; on this record, however, I am not convinced that each of his claims have been given the serious consideration they are due. Specifically, Bacon alleged that: (1) his resentencing counsel disclosed to the jury that Bacon previously had received a death sentence; (2) his resentenc-ing counsel failed to properly investigate and introduce mitigating evidence relating to his childhood and background; and (3) his resentencing counsel failed to investigate and introduce mitigating evidence of his adaptability to prison. Bacon has never received an evidentiary hearing on any of these properly preserved claims, and he would be entitled to relief if the factual allegations supporting these claims prove to be true. Given these circumstances and the fact that North Carolina has not, in my view, treated these three claims in a manner that indicates they were taken seriously, I must dissent.[2]
I.
Before discussing Bacon’s request for a hearing, I must address the majority’s suggestion that these claims were procedurally defaulted — a suggestion relied upon in large part by the North Carolina courts to deny Bacon’s claims.
The state courts of North Carolina concluded that Bacon procedurally defaulted on the three aforementioned Sixth Amendment claims. Although the majority has suggested this to be the correct conclusion, it also has exercised its discretion to address — and dispose of — Bacon’s claims on the merits. For the reasons set forth below, I cannot agree that Bacon procedurally defaulted these claims in state court.
A.
Bacon timely filed his Motion for Appropriate Relief (“MAR”) on September 25, *487 1995. Along with his MAR, Bacon filed a pleading captioned “Notice of Intention to Amend Motion for Appropriate Relief’ (“Notice MAR”), which (1) outlined numerous other claims and (2) explained that cutbacks in funding for a capital resource center, coupled with the denial of his motion for extension' of time, precluded him from filing each exception at that time. On November 20, 1995, the state MAR court denied Bacon’s MAR without a hearing and took no action on the Notice MAR.
On February 15, 1996, Bacon filed his “Amended MAR.” In response, the State argued that the state MAR court had no authority to consider this Amended MAR, inasmuch as the court had already dismissed the MAR. On February 28, 1996, the state MAR court disagreed, stating:
It is the ruling of this Court that the Court will grant the defendant’s amended Motion for Appropriate Relief. That I %oill reconsider the order denying an evidentiary hearing and dismissing the Motion for Appropriate Relief and I will set a date for further arguments on the question of whether or not the Court will grant an evidentiary hearing or whether the Court will deny the defendant’s motion and amended Motion for Appropriate Relief on the pleadings.
J.A. 473 (emphasis added).
The state MAR court subsequently heard argument on May 6, 1996. During this proceeding, the State argued that the state MAR court did not have the power to reconsider its ruling because the “Amended MAR” was actually a “Second MAR,” which was prohibited under the state rules. See ante at 479. By an order dated May 10, 1996, the state MAR court agreed with the State and denied the Amended MAR, holding, “The Court does not have the authority to amend, modify, or vacate the order entered denying the defendant’s [MAR].”[3] J.A. 480. Based on its holding that it had no authority to reconsider its denial of Bacon’s MAR, the state MAR court denied Bacon an evidentiary hearing on each of- the claims in his Amended MAR. ■
B.
We generally do not review a state’s dismissal of a claim based on procedural default; however, the basis for declaring a procedural default must be an independent and adequate state ground. See Wainmight v. Sykes, 433 U.S. 72, 81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); see also Thomas v. Davis, 192 F.3d 445, 450 (4th Cir.1999). In order for the ground to be independent, the state court must have based its decision on a state procedural bar. See Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In’ turn, the procedural bar is “adequate” only if it is a “firmly established and regularly followed state practice.” James v. Kentucky, 466 U.S. 341, 348-49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). Thus, in reviewing this state MAR court’s finding of procedural default, we must determine whether the procedural default rule — that a North Carolina state MAR court does not possess the power to reconsider its dismissal of an MAR — was “firmly established and regularly followed” such that it is an independent state basis “adequate” to bar federal habeas corpus review. While a rule of procedural default must have been consistently or regularly applied by state courts, there need not have been “undeviating adherence to such rule admitting of no exception.” Meadows v. Legursky, 904 F.2d 903, 907 (4th Cir.1990) (en banc).
Here, the state MAR court concluded that it lacked the authority to reconsider its denial of Bacon’s initial MAR. However, in at least two recent decisions, the Supreme Court of North Carolina has not only permitted, but actually endorsed a state MAR court’s authority to reconsider the denial of an MAR. For example, in State v. Basden, 350 N.C. 579, 515 S.E.2d 220 (1999), the defendant filed an MAR, *488 and the state MAR court denied him relief and dismissed the MAR. Thereafter, the defendant filed a motion to vacate the order denying his MAR; the State moved for summary denial of this motion to vacate; and the state MAR court granted the defendant time to respond. Id. at 221. In characterizing the procedural circumstance present in Basden, the Supreme Court of North Carolina utilized language that is equally apposite here:[4]
On these facts, we conclude that defendant’s motion to vacate the order denying his motion for appropriate relief was essentially a motion to reconsider the denial of his motion for appropriate relief. By allowing defendant time to respond to the State’s motion for summary denial of defendant’s motion to vacate, the trial court resurrected defendant’s motion for appropriate relief. The trial court’s actions amounted to a reconsideration of its order dismissing defendant’s motion for appropriate relief, thereby causing that motion for appropriate relief to be pending before the trial court until it was again denied.
Id. at 222 (emphasis added). Plainly, by endorsing the “resurrection]” of an MAR, the Supreme Court of North Carolina endorsed a state MAR court’s authority to reconsider its denial of an MAR. At the very least, Basden establishes that the denial of an MAR does not automatically divest a state MAR court of jurisdiction over an MAR.
The Supreme Court of North Carolina also endorsed, in State v. McHone, 348 N.C. 254, 499 S.E.2d 761 (1998), the power of state MAR courts to reconsider denied MARs. In McHone, the defendant filed an MAR, which the state MAR court summarily denied. Id. at 762. Subsequently, the defendant filed (1) a motion to vacate the denial order and (2) a supplemental MAR. Id. While the Supreme Court of North Carolina was not asked to specifically pass on the ability of the state MAR court to consider a supplemental MAR after the initial MAR had been denied, the Court not only permitted the post-denial supplementation of the MAR, but it also reversed the state MAR court’s denial of the supplemented MAR. Id. at 764.
Nevertheless, the State essentially maintains, in an argument apparently adopted by the state MAR court in this case, that a North Carolina MAR court has no jurisdiction to reconsider an MAR once it has been denied. In support of this argument, the State relies upon another recent case, State v. Green, 350 N.C. 400, 514 S.E.2d 724 (1999). In Green, the defendant filed an MAR, which was denied, and he then moved for reconsideration of the denial. Id. at 726. The MAR court apparently failed to act on his motion, and he had no petition for writ of certiorari pending before the Supreme Court of North Carolina. Id. at 728. Because the state MAR court had not granted the motion to reconsider its denial of Green’s MAR and because no MAR was otherwise pending, the defendant was not entitled to invoke discovery provisions that applied to MARs “pending” at the time a state discovery statute was passed. Id.; see also supra note 4.
However, the holding of Green, in which the state MAR court never granted defendant’s motion to reconsider, cannot be read — as the State would have us believe — as establishing that state MAR courts are without the power to reconsider denied MARs. In my view, Green merely held that if a state MAR court does not grant a motion to reconsider, then the MAR is not “pending.” More importantly, even if Green did stand for the rule that the State posits — that state MAR courts have no authority to reconsider denied MARs — the State has effectively estab *489 lished, when the holding of Green is compared with that of Basden and McHone, that this procedural default rule is not being applied regularly.
In short, the rule of procedural default applied in this case — that the state MAN court lacked the authority to reconsider its decision to deny the MAR because it already had been denied — cannot withstand review. The rule is not independent— inasmuch as it is not a standing rule in North Carolina, and even if it were independent, it certainly is not adequate — as illustrated by its uneven application. Indeed, the most recent decisions of the Supreme Court of North Carolina actually endorse a contrary approach. Thus, whatever may be said about the merits of Bacon’s claims, it is clear that the state MAR court improperly treated these issues as defaulted. With this background, I next turn to the merits of three of Bacon’s Sixth Amendment claims.
IÍ.
To justify federal habeas corpus relief based on allegations of ineffective assistance of counsel, Bacon must establish two elements. First, he must demonstrate that his counsel’s performance was deficient. “To establish ineffectiveness, a ‘defendant must show that counsel’s representation fell below an objective standard of reasonableness.’ ” Williams (Terry) v. Taylor, — U.S. -, -, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Second, he must demonstrate that the deficient performance prejudiced the defense. “To establish prejudice, he ‘must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Williams (Terry), — U.S. at-, 120 S.Ct. at 1511-12 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
A defendant is entitled to a hearing in connection with a federal habeas corpus petition under certain circumstances. At the outset, 28 U.S.C. § 2254(e)(2) prohibits, with certain exceptions, an evidentiary hearing in district court if the applicant “failed to develop the factual basis of a claim.” However, “ ‘failed to develop’ implies some lack of diligence,” , Williams (Michael) v. Taylor, — U.S.-,-, 120 S.Ct. 1479, 1487, 146 L.Ed.2d 435 (2000), and, in this case, Bacon diligently sought — and was denied — an evidentiary •hearing at each opportunity in state court. Thus, Bacon has not, for purposes of section 2254(e)(2), “failed to develop” the facts underlying his claims, and the section 2254(e)(2) bar does not apply here. Id.; see also Cardwell v. Greene, 152 F.3d 331, 338 (4th Cir.1998) (holding no bar under section 2254(e)(2) if applicant sought, but was refused, an evidentiary hearing in state court).
However, surmounting the hurdle set by section 2254(e) “does not translate to a conclusion that [Bacon] was entitled to a hearing.” Fisher v. Lee, 215 F.3d 438, 455 (4th Cir.2000). Instead, for an applicant to establish an entitlement to an evidentiary hearing, he must first prove one of the six factors set out by the Supreme Court in Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). See Fisher, 215 F.3d at 454. Those six factors are:
(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
372 U.S. at 313, 83 S.Ct. 745. The North Carolina courts have never afforded Bacon *490 a hearing on these three Sixth Amendment claims. Thus, it is not necessary to dwell on the Townsend factors; several of them plainly are satisfied here.
Second, to establish that a hearing was mandatory, Bacon had to allege “facts that, if true, would entitle him to relief.” Fisher, 215 F.3d at 454. This standard is analogous to the measure applied when determining the sufficiency of a complaint. Compare Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir.2000) (“In reviewing a district court’s order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6), ... we determine, [inter alia, ] ... whether the complaint, under the facts alleged” states a claim for relief.) (quotation marks omitted), with Fisher, 215 F.3d at 454 (in determining whether hearing was mandatory, we must ascertain whether applicant alleges facts “that, if true, would entitle him to relief.”). In other words, in assessing whether an evi-dentiary hearing in the district court was mandatory, we must assess the legal sufficiency of that claim, not the truth of the facts underlying that claim. And, as is the case with motions to dismiss, because only the legal sufficiency of the applicant’s claim, and not the facts in support of it, are tested in determining whether a hearing was mandatory, we must assume the truth of all facts alleged. Cf. Eastern Shore, 213 F.3d at 180.
In this context, three of Bacon’s claims allege facts that, if true, would establish a meritorious claim. I take these allegations of deficient performance in turn, before turning to the prejudice prong.
A.
1.
The first and primary error that I believe may properly be resolved only after an evidentiary hearing is based on Bacon’s lawyer’s improper revelation to the resen-tencing jury that Bacon had been previously been sentenced to death. The following passage from the decision of the Supreme Court of North Carolina in State v. Bacon, 337 N.C. 66, 446 S.E.2d 542 (1994) (“Bacon II”), describes both the error and resolution, on direct appeal, of Bacon’s argument:
Defendant next contends that his counsel provided ineffective representation by presenting evidence that defendant had received a death sentence in the first sentencing proceeding. During defendant’s closing argument, counsel mentioned that defendant comes from a loving family and that during his first sentencing, the courtroom contained several family members, but due to financial considerations and other conflicts revolving around work, the same family members were unable to attend this re-sentencing. Counsel further argued:
“And [defendant’s] mother had to sit here in the courtroom and listen to a judge impose a death penalty on her son. And so I suggest that it shouldn’t surprise you that she’s not here again.”
Defendant contends that this mention of his previous sentence was prejudicial and tainted the jury’s decision in this case. He argues that the jury was much more likely to impose a sentence of death knowing that a previous jury had recommended death.
We deem this argument a trial tactic to explain the absence of defendant’s mother. See State v. Richards, 294 N.C. 474, 500, 242 S.E.2d 844, 860 (1978). In addition, mere knowledge by the jurors of the prior death sentence does not necessarily demonstrate prejudice to the defendant. See State v. Simpson, 331 N.C. 267, 271, 415 S.E.2d 351, 353-54 (1992). We conclude that defendant has failed to show that his counsel performed below an objective standard of reasonableness or that actual prejudice resulted.
Bacon II, 446 S.E.2d at 555 (brackets in original and emphasis added). Subsequently, the ineffective assistance of counsel claim arising out of this error was *491 summarily dismissed by the state MAR court on procedural grounds and apparently also on the merits. J.A. 487.
In reviewing this claim, the district court was clearly concerned with its implications but concluded:
While this court has grave questions about the competence of any attorney who would mention the prior death penalty of his client in any context, especially after having exercised challenges to any jurors who knew of the prior death sentence, the court must apply the AEDPA’s standards of review as set out in Green[ v. French, 143 F.3d 865, 870 (4th Cir.1998) (“habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.”) ].
J.A. 53. The court then reviewed the North Carolina courts’ resolution of this claim and concluded that “reasonable jurists could agree with the Supreme Court of North Carolina in this application of the Strickland standard of effectiveness of counsel.” Id.
I disagree with the majority’s disposition of this claim for several reasons. First, the Supreme Court of North Carolina’s conclusion that this revelation — that Bacon had previously received a death sentence — constituted a reasonable “trial, tactic” was not based on any evidence; in fact, Bacon was denied the right to an evidentiary hearing on this issue in both the state MAR court and the district court. In that regard, I can conjure no possible legitimate reason why Bacon’s own lawyer would believe it necessary to reveal this fact — -that Bacon had received a death sen-fence during his first sentencing hearing— to the jury. Certainly, there were several more appropriate ways to explain his mother’s absence.
Also, in resolving this claim, the district court may have applied a “reasonableness” inquiry that has been specifically overturned by the Supreme Court. That is, it is unclear whether the district court applied a subjective test to this claim. The court ascertained whether the state court disposed of this claim “in a manner that reasonable jurists would all agree is unreasonable.” See Green, 143 F.3d at 870; see also Williams (Terry), 163 F.3d at 865 (“In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.”). Since the district court issued its ruling, however, the Supreme Court has determined that the “[no] reasonable jurist” language is inapposite under AEDPA. See Williams (Terry), — U.S. at-, 120 S.Ct. at 1521-22 (“The placement of this additional [‘no reasonable jurist’] overlay on the ‘unreasonable application’ clause was erroneous.”). Because it is unclear whether the district court applied a subjective or objective legal test, we should remand this appeal for application of the proper legal standard.
In short, Bacon’s claim of ineffective assistance of counsel in the improper revelation, to his resentencing jury, of his earlier death sentence has never been tested in an evidentiary hearing; it may have been dismissed under a superceded legal test; and it avers facts that, if true, would demonstrate deficient performance by his lawyer at sentencing.[5] I believe that this *492 claim should be remanded for an evidentia-ry hearing and reconsideration in light of the objective standards endorsed in Williams (Terry), supra.

2.

Second, Bacon maintains that his resen-tencing counsel was ineffective in failing to properly investigate and submit evidence about Bacon’s family history and character. Bacon avers — in statements that are supported by (1) an affidavit by Bacon’s MAR lawyer, who summarizes her conversations with a psychologist and (2) an affidavit of Bacon’s investigator — that his family history is troubling. Among other things, the affidavits specify numerous facts that allegedly were not submitted during either sentencing proceeding. Taking those allegations to be true, Bacon’s father was rarely around when Bacon was young,[6] and when his father finally began to participate in Bacon’s family, he proved to be an alcoholic. Bacon’s father also engaged in numerous adulterous affairs, and although Bacon was still very young, his mother sought his advice on the family’s problems, including his father’s adultery and other sensitive subjects.[7] As a result, Bacon showed signs of stress at a young age, including bed-wetting until the age of 14. Bacon also witnessed various incidents in which his father physically abused his mother.[8] Bacon contends that this family history background — a mother who confessed marital problems to Bacon and sought his help with those problems— would have been helpful to the jury members in helping them understand how, among other things, Bacon could have been manipulated by Clark — also a woman who had confessed marital problems to Bacon[9] and sought his help.
Bacon maintains that his counsel at his resentencing hearing conducted no research to supplement the work done in preparation for the first sentencing hearing. Indeed, Bacon alleges that, at his resentencing hearing, his counsel simply used the same character interviews that were submitted in his first sentencing hearing; thus, there was no additional evidence submitted at his second sentencing hearing. In turn, Bacon argues, the preparation for his first sentencing hearing was deeply flawed. Among other things, Bacon asserts that when his lawyer was preparing for his first sentencing hearing, the lawyer only conducted cursory interviews with witnesses who were going to attest to Bacon’s good character. In addition, during each of these perfunctory interviews, Bacon’s lawyer was accompanied by the State’s attorney. That is, during the only trip to Bacon’s hometown to interview witnesses, Bacon’s lawyer took the prosecutor along, and all of the interviews — which constituted all of the evidence submitted at each of the sentencing hearings — were *493 conducted in this fashion. When this unusual manner of interviewing witnesses is coupled with the failure to conduct additional investigation in preparation for the resentencing hearing, Bacon claims that his lawyer’s performance fell below the standards provided in Strickland.
The State counters that Bacon’s lawyer presented — at both of Bacon’s sentencing hearings — the testimony of sixteen friends and family members, each of whom testified to his otherwise good character and dependability. See Bacon II, 446 S.E.2d at 549-50 (summarizing evidence submitted); see also ante at 480. Thus, the State contends, the new family history evidence would have been cumulative of the character evidence submitted during the sentencing hearings. Based on this “culmulative” argument, the district court dismissed Bacon’s claim, concluding: “A review of the record shows ample evidence admitted at the resentencing hearing concerning petitioner’s childhood and background and how his relationship with his allegedly abusive father affected his relationship.” J.A. 41.
I cannot agree with the majority or the district court on this issue. There is a substantive difference between the character evidence submitted at both sentencing hearings and the new family history evidence upon which Bacon now relies. The new family history evidence would support the proposition that Bacon’s family history uniquely mirrors the circumstances surrounding the crime for which Bacon now faces the death penalty: In both instances (in his family and in his relationship with Clark), a woman was apparently subjected to abuse by her husband; Bacon served as a confidant to the woman, and Bacon was manipulated to take steps he otherwise might not have taken. This evidence is plainly distinguishable from the general character evidence about Bacon’s childhood submitted at both sentencing hearings, and in any event, the new family history evidence certainly cannot be characterized as “cumulative” of the general character evidence presented at the resen-tencing hearing. See ante at 482.
In sum, I believe that the record on this issue is simply too sparse to draw any conclusions on whether Bacon’s lawyers were ineffective. Indeed, the district court does not cite to the record in support of its conclusions, and the short, incomplete excerpts from the record, see J.A. 658-90, do not substantiate the district court’s conclusions. The new family history evidence upon which Bacon now relies closely parallels Bacon’s relationship with Clark, and if we take the allegations in the light most favorable to Bacon — as we must at this stage — he has established that his lawyers’ performance in the penalty stage of this capital case was deficient on a crucial character issue.
3.
Third, Bacon claims that his counsel erred in failing to submit evidence of Bacon’s adaptability to prison. There is no evidence in the record relating to this claim, inasmuch as it has been summarily dismissed without a hearing at both the state MAR level and in the district court. The majority has obviously concluded that the failure to submit evidence relating to this mitigating factor will never, in itself, constitute ineffective assistance of counsel; I, however, cannot. This mitigating circumstance has been endorsed by several courts, see Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Hall v. Washington, 106 F.3d 742, 752 (7th Cir.1997), and it must be accorded respect as an independent mitigating factor. In that vein, Bacon’s petition asserts that considerable evidence of his adaptability to prison existed, including evidence that Bacon had no significant disciplinary infractions while incarcerated from 1987 to February 1991. If these assertions prove to be true, then, depending on the other circumstances, the failure to submit that evidence would constitute ineffective performance in the Strickland sense. While failure to submit this mitigating circum *494 stance might not, standing alone, constitute a basis for a new trial, we should be in a position to review this claim, particularly in the context of the other two Sixth Amendment claims.[10] Again, the record must be developed in order to do so.
B.
That brings us to the prejudice prong under Strickland. I will not linger on this element because I believe that the Strickland standard is satisfied here. In other words, Bacon has demonstrated a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Williams (Terry), — U.S. at-, 120 S.Ct. at 1511-12 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
In terms of aggravating circumstances supporting the imposition of the death penalty, the resentencing jury found only one such circumstance to be present: that “this murder was committed for pecuniary gain.” See ante at 475. Moreover, this single aggravating circumstance could be characterized as a “weak” one under North Carolina law: of the fourteen reported decisions issued prior to Bacon’s appeal involving only the aggravating circumstance of “pecuniary gain,” the jury declined to impose death in twelve of them, and the Supreme Court of North Carolina held the death penalty to be disproportionate in the other two. Bacon II, 446 S.E.2d at 565-66. In other words, at the time of Bacon’s resentencing hearing, his was the only reported case in which the death penalty had been imposed based on the single factor of pecuniary gain.
On the other side of the equation, the resentencing jury found myriad mitigating factors to be present in Bacon’s case. Among other things, the jury unanimously determined that: (1) Bacon had no significant history of prior criminal activity; (2) Bacon acted under the domination of Clark; (3) Bacon had no history of violent behavior; (4) Bacon’s “character, habits, mentality, propensities and activities ... indicate that he is unlikely to commit another violent crime”; (5) Bacon’s criminal conduct was the result of circumstances unlikely to recur; (6) the initial idea for the plan was Clark’s; (7) Clark was convicted of the same crime and had received a life sentence; (8) Bacon had shown remorse; and (9) Bacon’s “family loved him, has continued to visit him while he has been incarcerated, and will continue to do so if he is sentenced to life imprisonment.” J.A. 534-35.
Significantly, moreover, the resentenc-ing jury rejected the mitigating factor that “his educational background, home life, and sobriety had mitigating value.” Bacon II, 446 S.E.2d at 549. This fact is important because if the facts underlying Bacon’s claim were true and had been submitted to the jury, it is highly probable that the jury also would have found this mitigating factor in Bacon’s favor.
When these nine mitigating factors are compared to the single aggravating circumstance, it becomes clear that the three alleged Sixth Amendment violations- — either collectively or, in the instance of the prior death sentence revelation, individually — could have affected the outcome of Bacon’s resentencing. Indeed, the Supreme Court of North Carolina determined that, in this context, failure to submit the mitigating factor that Bacon aided in the apprehension of his co-conspirator required a new sentencing hearing. Although that decision took place with respect to Bacon’s *495 first sentencing hearing, the court’s reasoning there is compelling:
Failing to submit the proper mitigating circumstance created too great a “risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.” Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
It is impossible for the reviewing court to conclusively determine the extent of the prejudice suffered by defendant; however, defendant has shown that there is a reasonable possibility that had this mitigating circumstance been submitted to the jury, a different result would have been reached at the sentencing hearing. N.C.G.S. § 15A-1443(a) (1988).
}¡: s{j ijs sfi ‡ ;■{
For error in the sentencing phase of defendant’s trial, the death sentence is vacated and the cause is remanded to Superior Court, Onslow County, for a new sentencing hearing.
State v. Bacon, 326 N.C. 404, 390 S.E.2d 327, 336 (1990).
Thus, in the context of this case — with one aggravating factor and myriad mitigating factors — the Supreme Court of North Carolina found the Strickland prejudice factor to be satisfied by the failure to submit to the first sentencing jury one additional mitigating factor: aiding in the apprehension of a co-conspirator. With this background, I am convinced that these three Sixth Amendment claims, collectively or — in the case of death penalty revelation — individually, allege facts sufficient to demonstrate prejudice in the Strickland sense. For this reason, I would remand this case for a proper, fair hearing on these issues.
III.
We are delving into the realm of legal fiction when we assert that Bacon received the full measure of fair procedure with respect to these claims of ineffective assistance of counsel. The state MAR court dismissed them on two bases: first invoking a rule of procedural default that is neither firmly established nor regularly followed, then, for good measure, dismissing the claims on the merits with no hearing or explanation. In fact, the state MAR court’s opinion addressing Bacon’s claims is so terse and perfunctory that it is difficult to determine whether it even addressed the merits of some claims.
We have now compounded the lack of fair procedure by affirming the dismissal of these three claims, again with no evi-dentiary hearing. Before we permit North Carolina to take Bacon’s life, we should be in a position to ascertain the merits of these arguments. In a case such as this — where a life hangs in the balance — it is more important than ever that justice not only be done, but that justice also be seen to be done.
I therefore dissent.

. I concur in the judgment with respect to the majority’s disposition of Bacon’s other claims and the State's appeal.

. The state MAR court also summarily dismissed most of the claims on the merits.

. Basden, 515 S.E.2d at 222, involved a slightly different question than that presented here. The question in Basden was whether the defendant's MAR was “pending” as of June 21, 1996, when a particular post-conviction dis-coveiy statute was enacted. Because the MAR was held to be "pending,” the defendant was entitled to discovery of the Government’s prosecution file.

. The majority hypothesizes that the juiy would have known of Bacon's prior death sentence, even if his lawyer had not highlighted it. This hypothesis, for several reasons, rests on shaky footing. First, the majority asserts that the jury would necessarily have realized that "the [] proceeding was a second sentencing hearing and one that would have been unnecessary if the first sentence [had not been death].” See ante at 484, n. 4. This assumes that Bacon’s jury would have made numerous complicated inferences about North Carolina criminal procedure — inferences that, consistent with the trial court’s instructions, would have been improper for it to make in any instance. Second, even if some members of this lay juiy had indeed engaged in such an improper endeavor, they *492 may well have drawn alternative conclusions about the procedural history of Bacon's case. Most importantly, however, the majority's hypothesis fails to realize one crucial fact: the potential prejudice of one or more jurors arriving — through surmise and conjecture — at an uncertain conclusion regarding Bacon’s earlier fate pales in comparison to the actual harm that surely accrued when each juror’s attention was pointedly drawn to the prior death sentence.

.One affidavit explains that Robert Bacon’s father first saw him when he was eight-years old. J.A. 508. Further, the affidavit claims that because Bacon's father was in the military and often assigned abroad, Bacon had very little contact with him until the age of nine.

. Among other things, Bacon’s mother encouraged him to eavesdrop on his father's phone calls and informed Bacon of her-plan to investigate his father’s adulterous activities.

. For example, on one occasion, when Bacon's mother confronted his father, Bacon’s father drove his car down the driveway, dragging Bacon's mother behind.

. Bacon was, for example, aware of numerous incidents between Glennie and Bonnie Clark, "including a time when he smashed her head against a cabinet and held a knife to her throat." J.A. 510.

. The majority undertakes to exonerate Bacon's lawyers by pointing out that (1) the first sentencing jury rejected this mitigating factor, thus (2) counsel's decision not to raise the subject before the resentencing jury was reasonable. See ante at 480, n. 3. It is important, however, that the first jury had before it evidence of Bacon’s adaptability after only four months in prison. In stark contrast, the re-sentencing jury had almost five years of Bacon's prison experience to consider. Particularly in light of the existence of additional mitigating factors, Bacon should be permitted to present evidence that this failure on the part of his lawyers constituted or contributed to ineffective assistance on their part.